TYLER G. NEWBY (CSB No. 205790)
tnewby@fenwick.com
NIKKI SEICHEPINE (CSB No. 359475)
nseichepine@fenwick.com
FENWICK & WEST LLP
555 California Street, 12th Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 650.938.5200

JANIE YOO-SCOTT (CSB No. 312715)
jyooscott@fenwick.com
FENWICK & WEST LLP
1155 F Street NW, 12th Floor
Washington, DC 20001
Telephone: 202.970.3000

JOAN LIU-KIM (CSB No. 342130)
joanieliu-kim@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500
Facsimile: 650.938.5200

Attorneys for Defendant
INMOBI PTE LTD.

FENWICK & WEST LLP
ATTORNEYS AT LAW

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JAMES CALDWELL, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INMOBI PTE LTD., a foreign limited company,<br><br>Defendant. | Case No. 3:25-cv-09977-AMO<br><br>**DEFENDANT INMOBI PTE LTD.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date: May 7, 2026<br>Time: 2:00 p.m.<br>Dept: Courtroom 10, Floor 19<br>Judge: Hon. Araceli Martínez-Olguín |

# TABLE OF CONTENTS

**Page**


NOTICE OF MOTION ........ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........ 2

I. INTRODUCTION ........ 2

II. FACTUAL BACKGROUND ........ 3

III. STATEMENT OF THE ISSUES TO BE DECIDED ........ 5

IV. ARGUMENT ........ 5

A. Caldwell Fails To Plead A Claim Under CIPA Section 638.51. ........ 5

1. A Pen Register Under CIPA Section 638.50 Applies Only To Outgoing Telephone And Electronic Communications. ........ 5

2. Caldwell Fails To Plead A Pen Register Claim With Sufficient Particularity. ........ 9

B. Caldwell Fails To Plead An Invasion Of Privacy Claim Under The California Constitution. ........ 10

C. Caldwell Fails To Plead Intrusion Upon Seclusion. ........ 14

V. CONCLUSION ........ 15


FENWICK & WEST LLP
ATTORNEYS AT LAW

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Application of United States of Am. For an Order Authorizing Use of a Cellular Tel. Digit. Analyzer*, 885 F. Supp. 197 (C.D. Cal. 1995) ....................9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................5, 9

*Aviles v. Liveramp, Inc.*, No. 24STCV19869, 2025 WL 487196 (Cal. Super. Jan. 28, 2025) ....................7

*Barragan v. Superior Court*, 148 Cal. App. 4th 1478 (2007) ....................8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................5

*Bradshaw v. Lowe's Companies, Inc.*, No. 25CV0742 DMS (MMP), 2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) ....................9

*Carter v. Prime Healthcare Paradise Valley LLC*, 198 Cal. App. 4th 396 (2011) ....................7

*Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, 2024 WL 4873370 (Cal. Super. Ct. L.A. Cty. Sept. 9, 2024) ....................10

*Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, Minute Order (Super. Ct., L.A. County) (Apr. 23, 2024) ....................9

*Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934 (S.D. Cal. 2024) ....................14

*Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986 (2011), *as modified* (June 7, 2011) ....................13, 15

*Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078 (N.D. Cal. 2018) ....................12

*Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1 (1994) ....................11

*In re Catapult Ent., Inc.*, 165 F.3d 747 (9th Cir. 1999) ....................8

*In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968 (N.D. Cal. 2014) ....................12, 14, 15

*In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185 (N.D. Cal. 2019) ....................12, 13

FENWICK & WEST LLP
ATTORNEYS AT LAW

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................11, 13, 15

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014) ....................10

*In re Zappos.com, Inc.*,
888 F.3d 1020 (9th Cir. 2018)....................11

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Mar. 13, 2024) ....................9

*Mitchener v. Curiosity Stream, Inc.*,
No. 25-cv-01471-NW, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) ....................11

*Palacios v. Fandom, Inc.*,
No. 24STCV11264, 2024 WL 5494527 (Cal. Super. Sept. 24, 2024).................... *passim*

*Peace & Freedom Party v. Bowen*,
912 F. Supp. 2d 905 (E.D. Cal. 2012), *aff'd sub nom. Lindsay v. Bowen*, 750 F.3d 1061 (9th Cir. 2014)....................2

*Rebeka Rodriguez v. Plivo Inc.*,
No. 24STCV08972, Order on Demurrer (Super. Ct., L.A. County) (Oct. 2, 2024) ....................9

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ....................12, 13

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201, 2025 WL 487194 (Cal. Super. Jan. 27, 2025) ....................6, 9

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir. 2001)....................12

*Yunker v. Pandora Media, Inc.*,
No. 11-CV-03113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ....................15

**STATUTES**

California Invasion of Privacy Act, Cal. Pen. Code §§ 630-639, *et seq* .................... *passim*

FENWICK & WEST LLP
ATTORNEYS AT LAW

FENWICK & WEST LLP
ATTORNEYS AT LAW

**NOTICE OF MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on May 7, 2026, at 2:00 p.m., or as soon as available, in the courtroom of the Honorable Araceli Martínez-Olguín, located at 450 Golden Gate Avenue, San Francisco, California, 94102, Defendant InMobi PTE Ltd. will and hereby does move the Court for an order dismissing the First Amended Class Action Complaint ("FAC") under Federal Rule of Civil Procedure 12(b)(6) for failure to plead facts sufficient to state a claim upon which relief may be granted.

InMobi seeks dismissal of the FAC in its entirety based on the following grounds. The FAC fails to allege that InMobi's SDK ("software development kit") is a pen register or trap and trace device in violation of Section 638.50 of the California Invasion of Privacy Act, Cal. Pen. Code §§ 630 *et seq*. Additionally, the FAC fails to allege that the SDK, which is used to enable advertising, is a serious or highly offensive invasion of Plaintiff's privacy in violation of the California Constitution or sufficient to state a common law claim for intrusion upon seclusion.

This Motion is based on this Notice of Motion, InMobi's Memorandum of Points and Authorities, the papers on file, any Reply which InMobi may file in support of this Motion, and any evidence and argument presented to the Court.

Dated: January 19, 2026

FENWICK & WEST LLP

By: */s/ Tyler G. Newby*
Tyler G. Newby
tnewby@fenwick.com

Attorneys for Defendant
INMOBI PTE LTD.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This case involves commonplace mobile advertising technology that enables websites and mobile apps to be commercially viable, rather than a novel surveillance scheme. InMobi operates a mobile advertising network and offers a software development kit ("SDK") that app developers voluntarily integrate to help monetize their apps through advertising. Plaintiff James Caldwell alleges that InMobi's SDK was embedded in a dating app he used on his Android phone and collected and shared his precise location, mobile advertising ID, IP address, and other device-level identifiers to advertisers and data brokers. He alleges those unidentified data brokers created user profiles inferring his behavior and preferences without his knowledge or consent.

Caldwell brings three causes of action based on these allegations. First, he asserts a violation of the California Invasion of Privacy Act, Cal. Pen. Code §§ 630 *et seq.* ("CIPA"), alleging that InMobi's collection of Caldwell's device's location, IP address, and other device-level data is akin to a "pen register" that captures dialing, routing, addressing, or signaling information under the statute. Second, he alleges InMobi's SDK invaded his right to privacy under California's Constitution, and third, he alleges that it intruded upon his seclusion under California common law.

The First Amended Class Action Complaint ("FAC") must be dismissed under Federal Rule of Civil Procedure 12(b)(6) because the FAC fails to plead facts supporting any of the claims. Caldwell's CIPA claim fails because there is no California authority supporting his expansive application of CIPA to the collection of such device-level metadata and location activity that are not tied to communications. Similarly, his invasion of privacy and intrusion upon seclusion claims fail because California courts have conclusively ruled that the collection of location data and IP addresses for advertising purposes does not constitute the type of highly offensive conduct required to bring these claims. Finally, Caldwell admits that he agreed to share his location with the dating app he used, undercutting any reasonable expectation of privacy in his location.

Because no amendment to his allegations can cure the deficiencies of Caldwell's legal theories, the Court should dismiss the FAC in its entirety with prejudice. *See Peace & Freedom Party v. Bowen,* 912 F. Supp. 2d 905, 907 (E.D. Cal. 2012), *aff'd sub nom. Lindsay v. Bowen*, 750

F.3d 1061 (9th Cir. 2014) (citing *Klamath-Lake Pharm. Ass'n v. Klamath Med. Serv. Bureau*, 701 F.2d 1276, 1293 (9th Cir. 1983) ("Futile amendments should not be permitted.").

## II. FACTUAL BACKGROUND

InMobi operates a mobile and digital advertising platform that connects advertisers with ad space displayed on mobile apps. FAC ¶¶ 2–3, 15, 17, 22, 52, 88, 100. InMobi provides mobile app developers with its SDK—"a collection of tools, libraries, and code"—which facilitates the collection, storage, and transmittal of user information for targeted advertising purposes. *See id.* ¶¶ 3–4, 16, n.3, 17–18, 70–71, 74, 78. InMobi's technology helps app developers deliver targeted ads that would be relevant to users based on their preferences. *Id.* ¶¶ 2, 5, 15, 17, 23, 26, 35. The FAC alleges that InMobi "builds or updates a profile for each identified user based on their location history, in-app behavior, and the content they engage with or ignore" to assist app developers. *Id.* ¶ 5; *see also id.* ¶¶ 6, 19, 21, 33, 37–38, 80, 87, 97.

App developers, not InMobi, choose to deploy the SDK in specific apps and obtain user consent. *See id.* ¶ 41 ("Consumers have… no direct relationship with InMobi"); *id.* ¶ 42 ("InMobi does not directly seek user consent…"); *see also id.* ¶ 83 (same). When an app developer deploys the SDK in its apps, the SDK collects and sends technical information, such as "mobile advertising IDs, IP address, device information (including device model, operating system version, and full user-agent string) and other information that can fingerprint a user or device." *Id.* ¶ 18; *see also id.* ¶¶ 51, 68, 70, 74, 78, 95. Further, "[w]hen a user enables location access within an app containing the SDK," the app transmits the user's location to InMobi "each time the app is opened." *Id.* ¶ 31. The geolocation data that is transmitted is used to i-mprove ad relevance. *See id.* ¶¶ 5, 18, 30–32, 34–35, 74, 95–97. The data collected is non-content metadata and is transmitted through automated systems without human review. *Id.* ¶¶ 16, n.3, 17–18, 25, 28, 31, 69–70.

Caldwell alleges he used "a dating app for gay individuals on his Android device" that incorporated InMobi's SDK. *Id.* ¶¶ 7, 50–51. While the FAC lists numerous generalized functionalities of InMobi's SDK, as to Caldwell, he claims only that the SDK collected "precise location, mobile advertising ID, IP address, and device fingerprinting data." *Id.* ¶¶ 51, 53, 55, 68, 70, 78, 96. Although he characterizes the SDK functionality as "industrial-scale surveillance," his

allegations concern the routine storage and transmission of technical data points that allow advertisers to serve ads based on users' behaviors and preferences. *See id.* ¶¶ 1–3, 5–6, 15, 17–27, 35–36, 49, 74, 78, 96–97. Caldwell alleges that the user profiles contain allegedly sensitive "segments"—for example, "Feminine Hygiene Category > Heavy Buyer," "Addictions > Gambling," "upscale neighborhood"—and that InMobi uses such data to infer "deeply private behavior" such as demographics, sexual orientation, and political leanings. *Id.* ¶¶ 1–2, 5–6, 19, 23–25, 33, 37–38, 54, 79, 97.

Caldwell further claims that his device identifiers were sent to an "identity-resolution service" and "linked to his real-world identity," but he does not allege who made that linkage, how it was made, what identifier tied a profile to him, or how any recipient could know that a segment corresponded to "James Caldwell." *Id.* ¶ 54; *see also* ¶ 4 (alleging vaguely that data is "matched against identity databases maintained by third-party data brokers, enabling the identification of the specific user" without explaining any specifics on how this is done); ¶ 88 (alleging vaguely that "persistent identifiers" allow "advertisers to link the behavior to real-world identities" without explaining how); ¶ 100 (same). In fact, Caldwell admits that the profiles are served in the aggregate across platforms, and not on an individual basis tied to anyone's actual identity. *See* ¶¶ 40, 54.

Caldwell claims that users lack visibility into these practices and have no direct relationship with InMobi, but he does not identify the app he used or facts showing that any data was actually tied to him personally. *Id.* ¶¶ 7, 41, 50–56, 83. The FAC relies on hypotheticals about how other systems *could* be misused, such as to identify LGBTQ+ individuals, track protesters, or target pregnant women—without alleging facts that any such misuse occurred here as to Caldwell. *Id.* ¶¶ 5, 8, 24, 37, 54. In short, the FAC's theory rests on data that enables inferences about inferences that are constantly updated. *Id.* ¶¶ 5, 25, 28, 37, 39, 53. The SDK collects bits of information to enable InMobi and advertising partners to make their best guesses at user preferences in order to serve relevant ads. *Id.* ¶¶ 5, 6, 18, 19, 21, 23–24, 28, 37–39, 40, 97.

Based on these allegations, Caldwell brings three causes of action. First, he asserts a violation of CIPA alleging InMobi's collection of Caldwell's device's location, IP address, and other device-level data is akin to a "pen register" that captures dialing, routing, addressing, or

signaling information. *Id.* ¶¶ 51, 68. Second, he brings a claim under the common law tort of intrusion upon seclusion, and third, an invasion of privacy claim, all based on the same technology. *Id.* ¶¶ 78–88, 92–100.

## III. STATEMENT OF THE ISSUES TO BE DECIDED

Whether the FAC must be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) because Caldwell has not plausibly pleaded facts sufficient to state a claim under which relief may be granted for his theories of (1) violation of CIPA Section 638.50, (2) invasion of privacy, or (3) intrusion upon seclusion.

## IV. ARGUMENT

### A. Caldwell Fails To Plead A Claim Under CIPA Section 638.51.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Supreme Court has articulated a "two-pronged approach" to assess whether Rule 8(a)'s plausibility requirement is met on a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (citing *Twombly*, 550 U.S. at 555). First, a court should identify pleadings that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. Second, after filtering out legal conclusions and other conclusory allegations, the court should determine whether the remaining factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.*

As demonstrated by legislative history and case law, CIPA Section 638.51 does not apply to InMobi's technology. Even if the Court finds support for Caldwell's expansive reading of the statute, Caldwell fails to plausibly state a claim with sufficient particularity to survive InMobi's motion to dismiss.

#### 1. A Pen Register Under CIPA Section 638.50 Applies Only To Outgoing Telephone And Electronic Communications.

The California legislature enacted CIPA "to protect the right of privacy of the people of this state" in response to "the development of new devices and techniques for the purpose of eavesdropping upon private communications" which "has created a serious threat to the free exercise of personal liberties…" Cal. Pen. Code § 630. CIPA's pen register subchapter prohibits

FENWICK & WEST LLP
ATTORNEYS AT LAW

installing or using a pen register without a court order. CIPA defines a "pen register" as a "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." *Id.* § 638.50(b). In other words, a pen register captures the routing, addressing, or signaling information of an outgoing electronic or telephonic communication, such as the phone number a person dialed or the email address and header information of an outgoing email. The FAC does not allege InMobi's SDK captured such information; it alleges the SDK collected Caldwell's location and usage activity on an unnamed app, not the routing or addressing information of his communications.

At least one court has limited CIPA's pen register provision to "dialing, routing, addressing, or signaling information from *telephone numbers*, and *not internet communications such as websites*." *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Jan. 27, 2025) (emphasis added); *see also* Bill Analysis, A.B. 929 (pen registers and trap and trace devices "generally track incoming and outgoing *telephone calls*" and "are often utilized by law enforcement to track which people in an investigation are communicating with one another") (emphasis added); *Palacios v. Fandom, Inc.*, No. 24STCV11264, 2024 WL 5494527, at *3 (Cal. Super. Sept. 24, 2024) (noting legislative materials support the interpretation that "a pen register is a mechanical device which records the numbers dialed from a telephone.") (cleaned up). The *Sanchez* court further explained that this interpretation is consistent with the broader statutory scheme: "Generally, CIPA criminalizes wiretapping, eavesdropping, interception or recording of telephone communications without authorization from a court." *Sanchez*, 2025 WL 487194, at *3. The *Sanchez* court therefore declined to follow rulings by federal courts applying CIPA Section 638.51 expansively to devices capturing information about online activities, noting that "[t]he [c]ourt is not aware of, nor do the parties cite, *any controlling published authority in California* on the issue of whether internet communications constitute 'pen registers' ... within the meaning of the CIPA." *Sanchez,* 2025 WL 487194, at *3. (emphasis added). The Court should adopt the *Sanchez* court's statutory interpretation here, as it is consistent with CIPA's text, purpose, and legislative history. But even if the Court applies CIPA's pen register provision to electronic

communications, the FAC does not allege the SDK intercepts them.

Caldwell alleges that InMobi collects "geolocation data, device identifiers, and other user-specific information" and that InMobi's SDK functions as a "pen register" but he never explains how it is a "device or process that records or decodes dialing, routing, addressing or signaling information, including specifically … geolocation data, mobile advertising IDs, IP addresses, and other device fingerprinting details." *See* FAC ¶¶ 4, 68, 74. Caldwell's allegations, at best, describe InMobi's collection of certain device-level data, such as the location of the mobile device and IP address, for purposes of creating user profiles for advertising. FAC ¶¶ 2, 4–5, 17–18, 22, 27, 80, 88, 97. Caldwell does nothing more than repeat the statutory language, failing to even identify which mobile app on his phone allegedly functioned as a pen register. *See* FAC ¶¶ 7, 64–75. Yet, "where, as here, statutory remedies are invoked, the facts 'must be pleaded with particularity.'" *Carter v. Prime Healthcare Paradise Valley LLC*, 198 Cal. App. 4th 396, 410 (2011).

Moreover, the data allegedly collected from Caldwell falls outside of the meaning of Section 638.51 because the legislature has not expanded the category of information collected by pen registers despite expanding other sections of CIPA. *Aviles v. Liveramp, Inc.*, No. 24STCV19869, 2025 WL 487196, at *2 (Cal. Super. Jan. 28, 2025) (sustaining demurrer due to a lack of "authority showing that the category of information collected by pen registers as defined by the statute has been expanded" to include a device's IP address or other record information); *Palacios*, 2024 WL 5494527, at *3. The *Palacios* court's analysis is instructive. There, the plaintiff asserted a CIPA violation based on allegations that the defendant's website contains code which records the user's device's IP address then sends the IP address to unknown third parties. *Id.* at *1. The court noted that historically, and as supported by legislative history, "a pen register is a mechanical device which records the numbers dialed from a telephone." *Palacios*, 2024 WL 5494527, at *3. And while "electronic communications" is now included in the statutory definition of a "pen register," the "analog of the number dialed by a telephone here is the IP address and related information of a website *accessed* by a computer – but not the computer's own IP address." *See id.* (emphasis added). In other words, a pen register device was never used to track the phone number of the telephone being used; it tracked the outgoing numbers dialed by the phone. So even if the statutory

FENWICK & WEST LLP
ATTORNEYS AT LAW

definition is now expanded to include some electronic communications, the information tracked by the "pen register" would be the "*destination* information – i.e., the information of the server that a computer is connecting to, but *not* the computer's own IP address." *Id.* (emphases in original).

CIPA's structure reveals the overbreadth of Caldwell's interpretation. CIPA's provisions contemplate pen registers only in the context of court-authorized law-enforcement monitoring of telephone lines or other electronic communications, not the collection of user data when interacting with a website or app. The statute clearly states that *law enforcement* must obtain a court order before it may use a pen register. Cal. Pen. Code § 638.51(a). The definition of pen register under Section 638.51 cannot be read in isolation without consideration of Section 638.52, which provides the only operative judicial-authorization procedure, and that procedure expressly requires a "telephone line" number and "physical location of the telephone line." *Id.* §§ 638.52(d)(1)–(3). The repeated references to "telephones" in Section 638.52 confirm that pen registers generally apply to the interception of specific, targeted telephonic communications, and perhaps modern technologies involving internet-based "calls," but not to data collected through ubiquitous advertising technology. Interpreting the statute otherwise would expose parties, such as InMobi, to liability for using "pen registers" without a court order even though no court could ever issue such an order because the technology does not involve a "telephone line." Caldwell's overbroad application of the statute conflicts with well-established rules of statutory construction that require statutes to be harmonized and not construed to yield absurd consequences. *See Barragan v. Superior Court*, 148 Cal. App. 4th 1478, 1484 (2007) (stating courts should "not interpret statutes in a manner that results in absurd consequences that could not have been intended by the Legislature"); *In re Catapult Ent., Inc.*, 165 F.3d 747, 751 (9th Cir. 1999) (noting that a court should interpret a statute in a way that "minimize[s] discord among related provisions.").

If pen registers were to extend to broadly used, commercial software such as mobile app SDKs, the court order requirements would be unworkable. Criminalizing modern, common technology yet providing no possible warrant path is precisely the "absurd consequence" *Barragan* instructs courts to avoid. Indeed, courts interpreting the same language that CIPA adopted from the federal Pen Register Act have held that the statute's prohibitions apply only to devices that can

be "attached to a telephone line." *See, e.g.*, *Application of United States of Am. For an Order Authorizing Use of a Cellular Tel. Digit. Analyzer*, 885 F. Supp. 197, 200 (C.D. Cal. 1995).

The Court should adopt the *Sanchez* and *Palacios* courts' statutory interpretation which is consistent with CIPA's text, purpose, and legislative history, and find that Caldwell's claim falls outside the scope of Section 638.51.

**2. Caldwell Fails To Plead A Pen Register Claim With Sufficient Particularity.**

Caldwell's CIPA claim fails because he does not identify which app he used that allegedly embedded the InMobi SDK or anything about that app other than that it is a "dating app for gay individuals." FAC ¶ 7. Caldwell's allegations that "InMobi's SDK functions as a pen register" and that InMobi "installed and used a pen register" are precisely the type of labels and conclusions *Iqbal* requires courts to disregard. *See id.* ¶¶ 68, 72. Caldwell fails to tether these allegations to concrete facts about any specific function of the technology or device-level communication from Caldwell's device to InMobi that would meet the statutory definition of a "pen register." Caldwell's conclusory allegations mirror the same complaints routinely dismissed at the pleading stage. *See, e.g., Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *4 (Cal. Super. Mar. 13, 2024) (sustaining demurrer when it was "unclear from the conclusively pled complaint how plaintiff's information was acquired" when the plaintiff failed to identify the specific technology or how it operated on the plaintiff's device); *Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, Minute Order pp. 1, 3 (Super. Ct., L.A. County) (Apr. 23, 2024) (dismissing conclusory allegations that a "secretly deployed tracking software" on a website violated CIPA when the complaint merely "repeat[ed] the generic statutory language" and "allege[d] few ultimate facts"); *Rebeka Rodriguez v. Plivo Inc.*, No. 24STCV08972, Order on Demurrer p. 2 (Super. Ct., L.A. County) (Oct. 2, 2024)) (sustaining demurrer where the plaintiff alleged violation of CIPA for use of "secretly deployed spyware" without any additional details).

Aside from these conclusory statements, Caldwell fails to allege any facts showing how geolocation data, mobile advertising IDs, IP addresses, and other device fingerprinting details constitute "dialing, routing, addressing or signaling information." *See Bradshaw v. Lowe's*

*Companies, Inc.*, No. 25CV0742 DMS (MMP), 2025 WL 3171740, at *5 (S.D. Cal. Nov. 12, 2025) (finding unclear whether user IDs and device and browser information are "dialing, routing, addressing, or signaling information"); *see also Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, 2024 WL 4873370, at *7 (Cal. Super. Ct. L.A. Cty. Sept. 9, 2024) (mere collection of IP addresses neither constitutes a pen register nor implicates a protected privacy interest).

Caldwell alleges that InMobi builds profiles based on behavioral and inferential information, which include "sensitive details" such as demographics, sexual orientation, and political leanings for ad targeting. FAC ¶¶ 5, 23, 37, 54, 79, 92, 94. Those allegations, if accepted as true, describe collection of *anonymous* information and the use of inferences by third parties such as "data brokers" or "identity resolution partners," not the collection of "dialing, routing, addressing, or signaling" information of outgoing communications from Caldwell's device. *See id.* ¶¶ 4, 20–21, 54, 71, 100. The FAC admits that this information is presented in the aggregate and fails to allege any facts supporting the assertion that the information is somehow "linked to his real-world identity." *Id.* ¶¶ 4, 40, 54, 88, 100. As explained above, the collection of such information is not covered under Section 638.51. *Palacios*, 2024 WL 5494527, at *3 (dismissing CIPA claim when the website code did "not collect the destination information of communications," emphasizing that Sections 638.50–638.51 regulate non-content signaling information, such as outgoing numbers from a particular phone). Indeed, the categories of information described by Caldwell are not attributes of a routing or dialing communication, but device-level inputs companies piece together to form inferences about user activity. *See* FAC ¶¶ 5–7, 18–21, 24, 37, 51, 54. No authority supports the contention that downstream inferences from smartphone usage data are covered by Section 638.51, which is limited solely to the collection of "dialing, routing, addressing, or signaling information" of communications. *See* Cal. Pen. Code § 638.50(b). Therefore, the CIPA pen register claim must be dismissed.

### B. Caldwell Fails To Plead An Invasion Of Privacy Claim Under The California Constitution.

Article I, Section 1 of the California Constitution establishes an inalienable right to privacy. "The California Constitution sets a 'high bar' for establishing an invasion of privacy claim." *In re*

*Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014) (quoting *Belluomini v. Citigroup, Inc.*, CV 13–01743 CRB, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013)). A plaintiff alleging a violation of the state constitutional right to privacy must establish each of the following: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy in the circumstances; and (3) conduct by defendant constituting a serious invasion of privacy. *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 39–40 (1994).

The FAC fails to plead a California constitutional invasion of privacy claim. *First*, the FAC fails to allege a legally protected privacy interest, which is a question of law to be decided by the court. *Id.* at 40. There is no legally protected privacy interest in the categories of data the FAC alleges InMobi's SDK accessed. Caldwell alleges that "timestamped geolocation data, mobile advertising IDs, IP addresses, and other device fingerprinting details" were collected. FAC ¶¶ 68, 78. None of these pieces of data personally identify Caldwell or any particular user. *See, e.g., In re Zappos.com, Inc.*, 888 F.3d 1020, 1023 (9th Cir. 2018) (defining "personal identifying information" as "names, account numbers, passwords, email addresses, billing and shipping addresses, telephone numbers, and credit and debit card information."). In *Mitchener v. Curiosity Stream, Inc.*, this district found that while IP addresses can provide "device and browser information" … and "geographic location," this is insufficient to allege a user's privacy was invaded because "it is well established in the Ninth Circuit that 'there is no legally protected privacy interest in IP addresses.'" No. 25-cv-01471-NW, 2025 WL 2272413, at *4–5 (N.D. Cal. Aug. 6, 2025) (citing *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020)); *see also In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (finding the disclosure of "the unique device identifier number, personal data, and geolocation information … does not constitute an egregious breach of social norms").

*Second*, the FAC does not plead that Caldwell had a reasonable expectation of privacy in device identifiers that do not individually identify him. There can be no reasonable expectation of privacy in anonymous and aggregated device-level data that is sent to "unknown third parties" and not linked to Caldwell's identity. *See* FAC ¶¶ 5, 17–18, 20–21, 40, 54, 56, 68–69. Caldwell's vague, conclusory reference to "user-specific information" linked to "real-world identities" is

FENWICK & WEST LLP
ATTORNEYS AT LAW

unsupported by factual allegations and entitled to no weight. *Id.* ¶¶ 4, 38, 54, 88, 100; *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) (the court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences"). Similarly, the FAC's reference to speculative reports that other systems have been used to identify LGBTQ+ individuals, track protesters, target pregnant women, monitor union organizers, and sell lists of healthcare clinic visitors does not support an allegation of a privacy invasion by InMobi. None of those speculative reports identifies or is linked to InMobi's SDK. *See, e.g.,* FAC ¶¶ 8, 47.

Further, a plaintiff cannot have a reasonable expectation of privacy if he consented to the actions he alleges constitute an intrusion, as Caldwell concedes here. *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 524 (C.D. Cal. 2021) ("[T]he plaintiff in an invasion of privacy case must have conducted himself or herself in a manner consistent with an actual expectation of privacy, i.e., he or she must not have manifested by his or her conduct a voluntary consent to the invasive actions of defendant.") (citing *Hill*, 7 Cal. 4th at 26). Caldwell purposefully "enable[d] location access" in order "to find nearby matches in a dating app." FAC ¶ 31. *See Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1092 (N.D. Cal. 2018) (dismissing constitutional invasion of privacy claim when "Plaintiff consented to the sharing of his geolocation data with perfect strangers (Lyft riders); thus, under the circumstances he did not have a reasonable expectation of privacy in such information."). Caldwell cannot contend he had a reasonable expectation of privacy in his location when he enabled location services in his dating app and freely provided that information to the app publishers and other strangers using the app.

And despite the extensive allegations regarding "real-time surveillance of users" through "precise" location tracking and "polygonal geofencing," nothing in the FAC suggests that Caldwell's device was continuously tracking his every move when he was not using the app, or that InMobi received any such comprehensive location data. *See* FAC ¶¶ 5–6, 7, 21, 29–38, 39, 53, 55, 88, 95. As established by *Google*, the collection of "bits and pieces" of information does not violate Caldwell's privacy rights. *See In re Google Location Hist. Litig.*, 428 F. Supp. 3d 185, 198 (N.D. Cal. 2019). In *Google*, the plaintiffs contended that the defendant's "surreptitious collection and

FENWICK & WEST LLP
ATTORNEYS AT LAW

storage of comprehensive and highly sensitive location data" violated their information privacy rights. *See id.* The court rejected this argument, noting that "[e]ven if the collection of granular and specific location data establishes an informational privacy interest, Plaintiffs' theory is undercut by the admission that Defendant only tracked and collected data during use of Google services. Accordingly, Defendant's 'profile' of a user is only as specific as their use of Google services." *Id.* The court distinguished the tracking of users' location while using the services from "comprehensive" surveillance using continuous GPS monitoring. *Id.* (concluding that "not *all* of Plaintiffs['] movements were being collected" and such "bits and pieces" do not violate privacy rights) (emphasis in original).

*Third*, disclosure of such categories of data for targeted advertising is not a serious invasion of privacy. "Actionable invasions of privacy must be sufficiently serious in their nature, scope, and actual or potential impact to constitute an egregious breach of the social norms underlying the privacy right." *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011), *as modified* (June 7, 2011) (citing *Hill*, 7 Cal. 4th at 37). In *Folgelstrom*, the court dismissed an invasion of privacy claim premised "routine commercial behavior" when the "supposed invasion of privacy essentially consisted of Lamps Plus obtaining plaintiff's address without his knowledge or permission, and using it to mail him coupons and other advertisements." *Id.* Similarly, in *In re iPhone Application Litig.*, the court dismissed claims identical to the FAC alleging that the plaintiffs' iPhone devices transmitted "device identifier number, personal data, and geolocation," holding that even if there were a legally protected interest and a reasonable expectation of privacy in such categories of data, "such disclosure does not constitute an egregious breach of social norms." 844 F. Supp. 2d at 1063–64. Likewise, in *Saleh*, the court held that allegations the defendant's software captured the user's IP address, the user's location at the time of the website visit, and the user's browser type and other device-level information were insufficient to demonstrate that the conduct constituted a serious invasion of a protected privacy interest. 562 F. Supp. 3d at 525. Applying the reasoning of *Folgelstrom*, *In re iPhone Application Litigation*, and *Saleh* to Caldwell's allegations, there was no serious invasion of privacy when InMobi engaged in routine commercial behavior by collecting anonymous data to serve advertisements to Caldwell.

FENWICK & WEST LLP
ATTORNEYS AT LAW

### C. Caldwell Fails To Plead Intrusion Upon Seclusion.

Caldwell's intrusion upon seclusion claim must be dismissed for the same reasons as his constitutional privacy right claim. To survive a motion to dismiss, a plaintiff must allege plausible facts supporting: (1) intentional intrusion into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy, and (2) that the intrusion occurred in a manner highly offensive to a reasonable person. *Esparza v. Kohl's, Inc.*, 723 F. Supp. 3d 934, 946 (S.D. Cal. 2024); *In re Google, Inc. Privacy Pol'y Litig.*, 58 F. Supp. 3d 968, 987–88 (N.D. Cal. 2014).

Caldwell's allegations of intrusive data collection practices are the same practices other courts have found are not highly offensive. Caldwell has alleged that InMobi collected "timestamped geolocation data, mobile advertising IDs, IP addresses, and other device fingerprinting details." FAC ¶¶ 51, 68, 78. These are routine commercial practices for online advertising. As one court found when dismissing similar allegations, the collection of "IP address[es]," "personal details," and "browsing history" failed to show the "collection of intimate or sensitive personally identifiable information" that may amount to a highly offensive intrusion). *Esparza*, 723 F. Supp. 3d at 946 (dismissing intrusion upon seclusion claim). The *Esparza* court found that identical allegations were "insufficient to demonstrate that Defendant's conduct constituted a serious invasion of a protected privacy interest." *Id.*

Caldwell's allegation that InMobi "builds or updates a profile for each identified user" by assigning purportedly sensitive "segments" and inferring "deeply private behavior," such as demographics, sexual orientation, and political leanings is also insufficient to state an intrusion claim. FAC ¶¶ 5, 23, 37, 54, 79, 92. First, Caldwell does not allege InMobi collected any of his own information for this purpose. These allegations are simply generalities about what InMobi purportedly does in the abstract and not tied to any concrete disclosure or intrusion affecting Caldwell. *See, e.g., id.* ¶¶ 2–6, 8, 17–18, 27–28, 32, 47, 51, 53, 55, 68–70, 78–79, 84, 95. Second, as other courts have found, these allegations do not describe highly offensive intrusions. In *In re Google, Inc. Privacy Policy Litig.*, the court dismissed an intrusion claim where the plaintiffs similarly alleged that Google logged users' "browsing habits, search queries, responsiveness to ads, demographic information, [and] declared preferences" and used that information to deliver tailored

advertising. 58 F. Supp. 3d at 973–74. The plaintiffs there alleged, much like Caldwell does here, that Google created "cross-platform dossiers of user data" to enable third parties to better target consumers with advertising. *Id.* at 975. Even so, the court held that these allegations "do not plausibly rise to the level of intrusion necessary to establish an intrusion claim." *Id.* at 987–88. Caldwell's allegations likewise describe routine advertising technology. FAC ¶¶ 2–6, 8, 17–18, 20–28, 47, 68–69, 78–79, 84, 95. These allegations reflect the same "cross-platform" profiling for targeted advertising like those rejected in *In re Google*—and thus do not plausibly amount to the highly offensive intrusion required for intrusion upon seclusion. 58 F. Supp. 3d at 975.

At best, the FAC's allegations describe routine, commercial activity for purposes of advertising, which fail to meet the elements of the common law intrusion claim. *See, e.g., Folgelstrom*, 195 Cal. App. 4th at 990 (2011) (affirming dismissal of common law privacy claim based on allegations the defendant surreptitiously collected data from customers during in-store retail transactions, paid a credit reporting agency to use the data to obtain individualized home addresses, and used those home addresses for direct advertising); *Yunker v. Pandora Media, Inc.*, No. 11-CV-03113 JSW, 2013 WL 1282980, at *13–14 (N.D. Cal. Mar. 26, 2013) (dismissing constitutional and common law privacy claims against app developer for allegedly sending device identifiers to advertisers because such routine commercial conduct did not constitute an "egregious breach of social norms"); *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1063 (disclosure of data, such as address, phone number, name, age, and gender, did not constitute an "egregious breach of social norms" under California law). The Court should reach the same conclusion here and dismiss Caldwell's vague allegations as insufficient to amount to the highly offensive conduct required under an intrusion upon seclusion claim.

## V. CONCLUSION

For the foregoing reasons, InMobi respectfully requests that the Court dismiss the FAC with prejudice in its entirety.

Dated: January 19, 2026

FENWICK & WEST LLP

By: */s/ Tyler G. Newby*
Tyler G. Newby
tnewby@fenwick.com

Attorneys for Defendant
INMOBI PTE LTD.

FENWICK & WEST LLP
ATTORNEYS AT LAW