Brandt Silverkorn (SBN 323530)
bsilverkorn@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300
Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Class*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

JAMES CALDWELL, individually and on behalf of all others similarly situated,

*Plaintiff*,

*v*.

INMOBI PTE LTD., a foreign limited company,

*Defendant*.

Case No. 3:25-cv-09977-AMO

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Date: May 7, 2026
Time: 2:00 PM
Dept: Courtroom 10, Floor 19
Judge: Hon. Araceli Martínez-Olguín

**TABLE OF CONTENTS**


**INTRODUCTION....................................................................................................................1**

**BACKGROUND ....................................................................................................................2**

**ARGUMENT .........................................................................................................................4**

**I. CALDWELL ALLEGES A CIPA PEN REGISTER CLAIM.............................................4**

  **A. InMobi's Software Is a Pen Register. .............................................................4**

  **B. InMobi Collects Signaling Information in Violation of CIPA. .................................7**

**II. CALDWELL SUFFICIENTLY PLEADS AN INVASION OF PRIVACY UNDER THE CALIFORNIA CONSTITUTION AND INTRUSION UPON SECLUSION. ......................... 8**

  **A. Caldwell Has a Reasonable Expectation of Privacy in the Comprehensive Data InMobi Collects and Enriches to Create Detailed Dossiers. .........................................9**

  **B. InMobi's Massive Surveillance Is Highly Offensive to a Reasonable Person........14**

**CONCLUSION ...................................................................................................................15**

# TABLE OF AUTHORITIES

**United States Supreme Court Cases**

*U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*,
510 U.S. 487 (1994) ........ 12

*U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*,
489 U.S. 749 (1989) ........ 13

**United States Court of Appeals Cases**

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ *passim*

*Satterfield v. Simon & Schuster, Inc.*,
569 F.3d 946 (9th Cir. 2009) ........ 4

**California Supreme Court Cases**

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272, 286 (2009) ........ 9, 14

**California Court of Appeals Cases**

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) ........ 15

**United States District Court Cases**

*Application of U.S. of Amer. For an Order Authorizing Use of a Cellular Tele. Digit. Analyzer*,
885 F. Supp. 197 (C.D. Cal. 1995) ........ 7

*Bradshaw v. Lowe's Cos., Inc.*,
No. 25CV0742 DMS (MMP), 2025 WL 3171740 (S.D. Cal. Nov. 12, 2025) ........ 8

*Brooks v. Thomson Reuters Corp.*,
No. 21-CV-01418-EMC, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) ........ 13

*Drummer v. Costar Grp., Inc.*,
No. EDCV 25-1047 JGB (SPx), 2025 WL 3190656 (C.D. Cal. Oct. 22, 2025) ........ 8

*Fregosa v. Mashable, Inc.*,
No. 25-CV-01094-CRB, 2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ........ *passim*

*Fregosa v. Mashable, Inc., motion to certify appeal denied*,
No. 25-CV-01094-CRB, 2026 WL 183857 (N.D. Cal. Jan. 23, 2026) ........ 2

*FTC v. Kochava, Inc.*,
715 F. Supp. 3d 1319 (D. Idaho 2024) ....................12

*Gabrielli v. Motorola Mobility LLC*,
No. 24-CV-09533-JST, 2025 WL 1939957 (N.D. Cal. July 14, 2025) ....................9

*Garon v. Keleops USA, Inc.*,
No. 25-CV-02124-DMR, 2025 WL 2522374 (N.D. Cal. Sept. 2, 2025)....................5, 7, 8

*Gilligan v. Experian Data Corp.*,
No. 25-CV-02873-RFL, 2026 WL 32259 (N.D. Cal. Jan. 6, 2026) ....................5, 10, 12, 14

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078, 1092 (N.D. Cal. 2018) ....................13

*Greenley v. Kochava, Inc.*,
684 F. Supp. 3d 1024 (S.D. Cal. 2023)....................5, 7, 8

*Harris v. iHeartMedia, Inc.*,
No. 25-CV-06038-EKL, 2026 WL 247875 (N.D. Cal. Jan. 29, 2026)....................5

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) ....................14

*In re Google Location Hist. Litig.*,
428 F. Supp. 3d 185 (N.D. Cal. 2019) ....................12

*In re Google Priv. Pol'y Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) ....................15

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ....................15

*Jackson v. Fandom, Inc.*,
No. 22-CV-04423-JST, 2023 WL 4670285 (N.D. Cal. July 20, 2023) ....................11

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ....................9, 10, 14, 15

*Mirmalek v. L.A. Times Commc'ns LLC*,
No. 24-CV-01797-CRB, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ....................7

*Mitchener v. CuriosityStream, Inc.*,
No. 25-CV-01471-NW, 2025 Wl 2272413 (N.D. Cal. Aug. 6, 2025)....................11

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) ....................6, 7

*Opperman v. Path, Inc.*,
205 F. Supp. 3d 1064 (N.D. Cal. 2016) ....................15

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) .................... *passim*

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) ....................6

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ....................13, 15

*Selby v. Sovrn Holdings, Inc.*,
No. 25-CV-03139-RFL, 2025 WL 2950164 (N.D. Cal. Oct. 17, 2025)....................10

*Semien v. PubMatic Inc.*,
No. 25-CV-03164-SI, 2026 WL 216333 (N.D. Cal. Jan. 27, 2026) .................... *passim*

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) .................... *passim*

*Walsh v. Dollar Tree Stores, Inc.*,
No. 25-CV-01601-SVK, 2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) ....................5

*Williams v. Facebook, Inc.*,
384 F. Supp. 3d 1043 (N.D. Cal. 2018) ....................15

*Yunker v. Pandora Media, Inc.*,
No. 11-CV-113 JSW, 2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) ....................15

**California Superior Court Cases**

*Casillas v. Transitions Optical, Inc.*,
No. 23STCV30742, 2024 WL 4873370 (Cal. Super. Ct. Sept. 9, 2024)....................8

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024) ....................8

*Palacios v. Fandom, Inc.*,
No. 24STCV11264, 2024 WL 5494527 (Cal. Super. Ct. Sept. 24, 2024)....................5, 6

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201, 2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025)....................5, 6

**Statutes**

Cal. Penal Code § 632.7....................4

Cal. Penal Code § 638.50(b) ....................4, 7, 8

Cal. Penal Code § 638.51(a) ....................1

Cal. Penal Code § 638.52 ....................6, 7

## INTRODUCTION

Defendant InMobi PTE Ltd. ("InMobi") is one of the world's largest mobile advertising technology companies. InMobi operates a software package that integrates with a wide variety of smartphone apps. As the app runs, InMobi's software operates in the background, without users' knowledge, to collect highly personal and granular information including unique advertising IDs, the names of apps installed on the phone, the user's precise geographic location, and other information used to "fingerprint" the precise device and user. InMobi then enriches this data by aggregating it with information about that user acquired from its "identity resolution" partners, providing InMobi a "cradle-to-grave" profile that allows InMobi to track the user across apps, contexts, and locations. InMobi repeatedly monetizes this data, using its intensely personalized profiles to categorize users by sensitive traits and sell highly targeted ad spots to advertisers. Plaintiff James Caldwell ("Caldwell") downloaded a gay dating app that, unbeknownst to him, was surreptitiously running InMobi's software. Caldwell alleges that InMobi covertly obtained detailed and sensitive information about his phone and app usage, including his precise timestamped geolocation, subsequently enriching, monetizing, and sharing that sensitive data to show him ads. Caldwell alleges that this violates the California Invasion of Privacy Act, Cal. Penal Code § 638.51(a) ("CIPA"), and constitutes an intrusion upon seclusion and invasion of privacy under the California Constitution.

InMobi moves to dismiss each cause of action. With respect to the CIPA claim, InMobi argues a "pen register" under CIPA is limited to traditional telephone technology and thus its technology is outside of CIPA's reach. (ECF No. 18 at 5 (the "Mem.").) InMobi further argues that Caldwell has not sufficiently alleged InMobi captured the type of information required for a CIPA pen register claim. (Mem. at 9.) These arguments each fail. Courts have consistently recognized that CIPA's pen register definition encompasses software packages like the one at issue here and expressly rejected InMobi's interpretation. *See Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1093 (N.D. Cal. 2025) (collecting cases). Courts have been equally consistent in finding that the type of identifying data that Caldwell alleges InMobi collected, such as precise device identifier information, IP addresses, and location, is enough to state a CIPA claim. *Fregosa v.*

*Mashable, Inc.*, No. 25-CV-01094-CRB, 2025 WL 2886399, at *5 (N.D. Cal. Oct. 9, 2025), *motion to certify appeal denied*, No. 25-CV-01094-CRB, 2026 WL 183857 (N.D. Cal. Jan. 23, 2026).

As for the California Constitution invasion of privacy and intrusion upon seclusion claims, InMobi argues that they fail for the same reasons: that Caldwell has not alleged (i) a reasonable expectation of privacy in a protectable interest, or (ii) that any invasion of that interest was highly offensive to a reasonable person. (Mem. at 11, 13–15.) Here again InMobi misses the mark. InMobi ignores the weight of authority consistently finding a reasonable expectation of privacy in this type of "cradle-to-grave" profile gained from surreptitious and comprehensive tracking on the internet. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 603–04 (9th Cir. 2020). Caldwell's allegations do not present the type of limited data collection—both in frequency and detail—that InMobi tries to suggest. Caldwell also sufficiently alleges that a reasonable person is likely to be highly offended by InMobi's secretive monitoring and compilation of detailed dossiers that it monetizes to bombard individuals with highly personalized ads. These allegations are sufficient to survive InMobi's motion. *Id.* at 606. InMobi's motion to dismiss should be denied in its entirety.

**BACKGROUND**

InMobi characterizes itself as the "world's largest independent mobile advertising network." (FAC ¶ 15.) To facilitate its operations, InMobi provides a software development kit ("SDK")—a collection of software tools, libraries, and code—to mobile app developers. (*Id.* ¶¶ 3, 16.) This code is embedded into thousands of apps, some of which have been downloaded billions of times. (*Id.* ¶ 3.) When a user opens or interacts with an app containing InMobi's SDK, the software automatically and silently collects and transmits certain granular user data directly from the device to InMobi's servers in real time. (*Id.* ¶¶ 3, 16, 69.) This data includes users' latitude and longitude values out to seven decimal places. (*Id.* ¶ 32.) This resolution allows InMobi to pinpoint a user's location within centimeters, identifying specific buildings or addresses. (*Id.*) InMobi also automatically gathers mobile advertising IDs, IP addresses, device models, operating system versions, and full user-agent strings. (*Id.* ¶ 18.) And by analyzing ad requests from other apps on the same device, InMobi can detect which other apps are installed to draw inferences about a user's traits and interests. (*Id.* ¶ 19.)

InMobi does not stop there. After it collects this precise data, InMobi aggregates and enriches it through "identity resolution" partners such as LiveRamp, LiveIntent, ID5, and Lotame Panorama, which have existing information on the user. (*Id.* ¶ 20.) These companies ingest the data to generate unique identity tokens—persistent identifiers that link all known data points about a particular user across different devices, platforms, and services. (*Id.*) This matching process allows InMobi to merge pseudonymous identifiers into a single, unified profile for each user, effectively negating any anonymity. (*Id.* ¶ 21.) InMobi can then segment individuals into highly sensitive categories, such as "Eating Disorder," "Addictions > Alcohol," or "Use Any Rx Treatment for Depression." (*Id.* ¶ 24.) InMobi's profiles also include sensitive details regarding sexual orientation, income level, and political leanings. (*Id.* ¶ 5). And precise location histories allow InMobi to distinguish whether a user visited specific locations, such as an oncology clinic, a reproductive health center, or a place of worship. (*Id.* ¶ 33.) InMobi utilizes "polygonal geofencing," custom-drawn virtual boundaries, to monitor users within specific buildings, retail stores, or even individual homes. (*Id.* ¶ 34). This system allows InMobi to measure how long a person remains inside a location, track how often they return, and detect visits to competitors (*Id.* ¶ 36)

InMobi packages these enriched profiles into "bid requests" and broadcasts them to hundreds or thousands of companies in Real-Time Bidding ("RTB") auctions. (*Id.* ¶¶ 6, 22). These transmissions act as real-time updates on a user's digital and physical behavior, enabling persistent tracking over time. (*Id.* ¶ 28).

Plaintiff James Caldwell used a dating app for gay individuals on his Android device. (*Id.* ¶¶ 7, 50). Unbeknownst to him, this app was surreptitiously running InMobi's embedded SDK, which collected his precise location, mobile advertising ID, IP address, and device fingerprinting data. (*Id.* ¶¶ 7, 51). Caldwell alleges this data was routed through an identity resolution service and linked to his real-world identity. (*Id.* ¶ 54.) This created a persistent advertising profile that revealed intimate details regarding Caldwell's sexual orientation, habits, and movement patterns. (*Id.*) Caldwell never received any disclosure that InMobi's tracking technology was embedded in the platform he used. (*Id.* ¶ 55). While he consented to share his location with the dating app for the specific purpose of finding matches, he did not consent to InMobi's collection, enrichment, or sale of his sensitive

information to its extensive network of third-party advertisers and partners. (*Id.* ¶¶ 31, 56.)

## ARGUMENT

### I. CALDWELL ALLEGES A CIPA PEN REGISTER CLAIM

#### A. InMobi's Software Is a Pen Register.

InMobi urges the Court to adopt a narrow reading of what constitutes a "pen register" under CIPA: one that applies almost exclusively to traditional telephone communications, which InMobi claims excepts its technology from CIPA liability. (Mem. at 5–6.) Such a reading has been nearly unanimously rejected by courts considering it. Instead, these courts have found that CIPA's pen register restrictions encompass software packages like InMobi's that surreptitiously and automatically collect all manner of signaling information. (FAC ¶¶ 18, 68, 69.)

A plain reading of CIPA's statutory language precludes InMobi's argument. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir. 2009) ("[O]ur inquiry begins with the statutory text, and ends there as well if the text is unambiguous.") (quotation omitted). A "pen register" is any "device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Penal Code § 638.50(b).[1] "Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register." *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 929 (N.D. Cal. 2024). Tellingly, where "other sections of CIPA specifically *do* include language regarding telephones," the pen register definition contains no such limitation. *Riganian*, 791 F. Supp. 3d at 1093 (pointing to Cal. Penal Code § 632.7, which applies to, *inter alia*, "a communication transmitted between two cellular radio telephones") (emphasis in original). "[I]f the drafters of Section 638.50 intended for 'pen register' to be limited to telephone technologies, they knew how to say so." *Id*. They simply chose not to.

It is for that reason that "federal courts have interpreted the plain language of Section 638.50 expansively to find that 'pen registers' include[] data collection tools beyond those the record information from telephones." *Id.* (collecting cases). This includes software packages like InMobi's,

---

[1] InMobi admits that "[t]he data collected is non-content metadata . . . " (Mem. at 3.)

where "the embedded trackers cause the browser to transmit the user's IP address and device identifiers to third parties." *Fregosa*, 2025 WL 2886399, at *5 ("Several judges in this district, including Judges Lin, Orrick, Pitts, Ryu, Tigar, and [Breyer], have held that such allegations suffice at the pleading stage.") (collecting cases); *see also Harris v. iHeartMedia, Inc*., No. 25-CV-06038-EKL, 2026 WL 247875, at *3 (N.D. Cal. Jan. 29, 2026) ("The overwhelming majority of courts that have considered this question have similarly concluded that third-party internet trackers meet the technical requirements of a pen register under CIPA.") *Semien v. PubMatic Inc.*, No. 25-CV-03164-SI, 2026 WL 216333, at *11 (N.D. Cal. Jan. 27, 2026); *Gilligan v. Experian Data Corp*., No. 25-CV-02873-RFL, 2026 WL 32259, at *4 (N.D. Cal. Jan. 6, 2026); *Walsh v. Dollar Tree Stores, Inc*., No. 25-CV-01601-SVK, 2025 WL 2939229, at *18 (N.D. Cal. Oct. 16, 2025) ("[A] process, such as the placing of cookies, that collects IP addresses (or other routing, addressing, or signaling information) can be a pen register under the plain meaning of the statute."); *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023) (rejecting "contention that a private company's surreptitiously embedded software installed in a telephone cannot constitute a 'pen register.'").

InMobi points to an outlier decision, *Sanchez v. Cars.com Inc.*, that cabined the pen register definition a device capturing "information from telephone numbers." No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Ct. Jan. 27, 2025). *Sanchez* has been roundly criticized as "focus[ing] its analysis on the legislative history of the CIPA rather than on the expansive, plain language of Section 638.50." *Riganian*, 791 F. Supp. 3d at 1094; *Garon v. Keleops USA, Inc.*, No. 25-CV-02124-DMR, 2025 WL 2522374, at *5 (N.D. Cal. Sept. 2, 2025). InMobi also cites *Palacios v. Fandom, Inc.*, but that decision recognized that "the statutory definition of a pen register now includes electronic communications in mediums other than simply telephone communications. . . . " No. 24STCV11264, 2024 WL 5494527, at *3 (Cal. Super. Ct. Sep. 24, 2024). In fact, in two parallel cases against the same defendant, sister courts in this District specifically found the tracking software at issue—nearly identical to the type InMobi operates that collects specific addressing information, like IP addresses and device fingerprinting data, FAC ¶¶ 18, 68—*was* plausibly alleged to be a pen register and denied the defendant's motion to dismiss. *Shah*, 754 F. Supp. 3d at 928; *Fregosa*, 2025 WL 2886399, at *5. While defendants in CIPA cases have continued to cite the

*Sanchez* and *Palacios* opinions since they were issued, they have not been endorsed by federal courts in this district or elsewhere. To the contrary, "[c]ourts in this district have consistently recognized" that tracking technologies like those at issue here function as pen registers. *Id.* (collecting cases). This Court should join those ranks.

Tacitly recognizing the pen register definition is not limited to traditional telephones, InMobi pivots to argue that the type of electronic signaling information its software collects, such as "geolocation data, mobile advertising IDs, IP addresses, and other device fingerprinting detail," (FAC ¶¶ 4, 68, 74, 78), is outside the scope of electronic information covered by CIPA. (Mem. at 7.) InMobi argues a device can be a pen register only if it captures certain "outgoing" information, like the IP address of a destination computer or an outgoing email address. (Mem. at 7.) This argument has also been repeatedly rejected. For example, the *Shah* court—which declined the invitation to adopt the *Palacios* court's reading despite the same defendant's technologies being at issue—reasoned as follows:

> By the plain meaning of § 638.50(b), collection of the recipient phone number or IP address is not a required element. All that is required is that the Trackers record addressing information transmitted by the user's computer or smartphone in connection with the outgoing HTTP request to [the defendant's] website, regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue.

*Shah*, 754 F. Supp. 3d at 929; *see also Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 930 (C.D. Cal. 2025) (finding collection of "operating system information, browser information, [and] geolocation data" within scope of CIPA pen register claim); *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1077 (C.D. Cal. 2024) (finding collection of "browser and device data plausibly fall[s] within the scope of" CIPA pen register claim). As in these cases, the type of user data InMobi's SDK collects—precise geolocation, mobile advertising IDs, IP address, device information (including device model, operating system version, and full user-agent string), and other information that can fingerprint a user or device, (FAC ¶ 18)—is covered by CIPA.

In a final bid to narrow the pen register definition, InMobi points to a provision of CIPA not at issue here: the law enforcement authorization procedure to apply for a pen register. (Mem. at 8 (citing Cal. Penal Code § 638.52).) InMobi contends that any definitional constraints found there

must apply to the entirety of CIPA, lest absurd consequences ensue. *Id.* This argument has also been conclusively rejected. *See, e.g.*, *Shah*, 754 F. Supp. 3d at 930 (recognizing that § 638.52 "merely lists requirements relating to a particular type of pen register: one that is installed on a telephone line. . . . that does not alter the statutory definition of a pen register stated in § 638.50(b) or the prohibition on non-law enforcement use of such pen registers."); *Greenley*, 684 F. Supp. 3d at 1050. InMobi points to *Application of United States of America For an Order Authorizing Use of a Cellular Telephone Digital Analyzer*, but that does not help its case. 885 F. Supp. 197, 200 (C.D. Cal. 1995). That case involved a federal statute, not CIPA, and "does not foreclose the possibility that software may qualify as a pen register . . . under California law." *Moody*, 742 F. Supp. 3d at 1076. InMobi's software does so here.

**B. InMobi Collects Signaling Information in Violation of CIPA.**

InMobi next argues that Caldwell's allegations about InMobi's software are too conclusory to state a pen register claim. (Mem. at 9.) InMobi willingly ignores the pages of facts that allege how InMobi's software development kit functions across every app it integrates with, the precise addressing and signaling information it collects (including precise latitude and longitude values and other "fingerprinting" data) from all of the apps it is integrated in, and how InMobi uses that information to build cradle-to-grave profiles about individuals like Caldwell. (*See* FAC ¶¶ 3–6, 16–20, 31–32, 51, 68–71.) Courts regularly find such allegations withstand a motion to dismiss. *See Semien*, 2026 WL 216333, at *1, *11 (recognizing allegations that tracker "collects information from users' browsers and devices when they visit the websites of [defendant's] publisher clients" sufficient to state CIPA claim); *Fregosa*, 2025 WL 2886399, at *5 (finding allegations that "when a user loads [defendant's] website, their browser sends an HTTP request to [defendant's] servers, and the embedded trackers cause the browser to transmit the user's IP address and device identifiers to third parties. . . . " sufficient to state CIPA pen register claim); *Garon*, 2025 WL 2522374, at *2 (alleging that tracker collected "the user's IP address, the user-agent string (browser, operating system, and device type), and device capabilities" sufficient); *Mirmalek v. L.A. Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *4 (N.D. Cal. Dec. 12, 2024) (finding allegation that trackers collected IP addresses stated claim); *Shah*, 754 F. Supp. 3d at 929 (same);

*Greenley*, 684 F. Supp. 3d at 1050 (finding allegations about "software that identifies consumers, gathers data, and correlates that data through unique 'fingerprinting'" stated claim). These cases confirm that data such as IP addresses and device fingerprinting information constitutes "routing, addressing, or signaling information" under Cal. Penal Code § 638.50(b). *See, e.g.*, *Shah*, 754 F. Supp. 3d at 929. And as discussed further in Section II.A., *infra*, courts have rejected that there is no protectable interest in an IP address simply because it was shared with the website operator. *See Shah*, 754 F. Supp. 3d at 932 ("A user who consents to disclose their IP address to Fandom as part of accessing its website does not necessarily consent to disclose their IP address to the third parties operating the Trackers.").

The few cases InMobi cites are unpersuasive. For example, the plaintiff in *Licea v. Hickory Farms LLC*, failed to even allege that a phone or other communication device was used. No. 23STCV26148, 2024 WL 1698147, at *4 (Cal. Super. Ct. Mar. 13, 2024). *Garon* rightly rejected following *Licea* and found allegations like those here sufficient to state a claim. *Garon*, 2025 WL 2522374, at *2. Similarly, *Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, 2024 WL 4873370, at *7 (Cal. Super. Ct. Sept. 9, 2024) has not been adopted by other courts. As *Drummer v. Costar Group, Inc*. recognized when allowing analogous CIPA claims to proceed, the *Licea* and *Casillas* "cases appear to be based on far less comprehensive complaints than those submitted by" Caldwell. No. EDCV 25-1047 JGB (SPx), 2025 WL 3190656, at *4 n.1 (C.D. Cal. Oct. 22, 2025). And *Bradshaw v. Lowe's Cos., Inc*. rejected the defendants' arguments that their tracking technology was not a pen register, or that allegations that defendants "secretly utilized various trackers . . . to collect their IP addresses, unique identifiers, and browsing information" were insufficient. No. 25CV0742 DMS (MMP), 2025 WL 3171740, at *8 (S.D. Cal. Nov. 12, 2025). Caldwell's CIPA claim survives.

## II. CALDWELL SUFFICIENTLY PLEADS AN INVASION OF PRIVACY UNDER THE CALIFORNIA CONSTITUTION AND INTRUSION UPON SECLUSION.

"Because claims for intrusion upon seclusion and invasion of privacy under the California Constitution have 'similar elements,' courts 'consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive.'" *Riganian*,

791 F. Supp. 3d at 1085 (citing *In re Facebook*, 956 F.3d at 601); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 941 (N.D. Cal. 2023) (same). Caldwell adequately alleges how InMobi's surreptitious collection of his app usage and behavioral data, which InMobi develops into detailed dossiers it sells for its own profit without his consent, meets these elements. *See, e.g.*, *In re Facebook*, 956 F.3d at 599 (finding harm to protectable privacy interests where defendant created profiles that "would allegedly reveal an individual's likes, dislikes, interests, and habits over a significant amount of time, without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives.").

### A. Caldwell Has a Reasonable Expectation of Privacy in the Comprehensive Data InMobi Collects and Enriches to Create Detailed Dossiers.

A reasonable expectation of privacy exists where a defendant gains "unwanted access to data by electronic or other covert means, in violation of the law or social norms." *In re Facebook*, 956 F.3d at 601–02 (quoting *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286 (2009)). InMobi takes an impossibly narrow view of the information at issue in this case and how it was obtained, one that starts and ends with an IP address. (Mem. at 11.) This ignores the trove of other data InMobi secretly collects and uses to build a comprehensive, individualized profile that InMobi commercially exploits for its own gain. (FAC ¶¶ 18–21.) In addition to automatically gathering geolocation data, IP addresses, and device fingerprinting details stemming from the use of a gay dating app (*id.* ¶ 19), InMobi detects what other apps are installed on a phone, (*id.* ¶ 19); enriches the data it collects from third parties, (*id.* ¶ 20); formulates "persistent identifiers" that track users across devices and services, while updating profiles with new data, like "app usage patterns, timestamped location histories, device metadata, and travel routines." (*Id.* ¶¶ 20–21).

Courts in this district have long recognized that individuals have a reasonable expectation of privacy in aggregated information like this obtained through pervasive data collection practices. *See Gabrielli v. Motorola Mobility LLC*, No. 24-CV-09533-JST, 2025 WL 1939957, at *1, 9–10 (N.D. Cal. July 14, 2025) (alleging tracking "cookies collect detailed information about users' activity on the website, including their browsing history, user inputs, demographic information, shopping behavior, referring URLs, session information, IP addresses, geolocation data, and device

information. . . . [which was] transmitted in real time and used to build behavioral profiles and serve targeted advertising" stated invasion of privacy under the California Constitution and intrusion upon seclusion); *Selby v. Sovrn Holdings, Inc.*, No. 25-CV-03139-RFL, 2025 WL 2950164, at *3 (N.D. Cal. Oct. 17, 2025) (same). This finds its genesis in *In re Facebook*, where the plaintiff alleged that "Facebook acquire[d] an 'enormous amount of individualized data' through its use of cookies on the countless websites that incorporate Facebook plug-ins" that "can be easily collected without user knowledge." 956 F.3d at 603. The plaintiff contended such collection "divulge[d] a user's personal interests, queries, and habits on third-party websites operating outside of Facebook's platform," affording it "cradle-to-grave profile[s]" on internet users without their permission. *Id.* at 599, 605. The court recognized Facebook's collection of an individual's "comprehensive browsing history" allowed it to "compile a 'vast repository of personal data,'" and "highly personalized profiles from sensitive browsing histories and habits." *Id.* at 603–04. It thus held the plaintiff "adequately alleged a reasonable expectation of privacy" in such information. *Id.* at 603.

Importantly, courts have found a reasonable expectation of privacy in nearly the exact same scenario presented here, with an advertising exchange defendant facing privacy claims stemming from its omnipresent tracking. *See Semien*, 2026 WL 216333, at *6 (finding reasonable expectation of privacy when defendant "tracks, compiles, and sells massive amounts of information about plaintiffs without their knowledge that a [defendant's tracking] pixel has been loaded on a given website."); *Riganian*, 791 F. Supp. 3d at 1088 (finding reasonable expectation of privacy against defendant using "tracking and identity resolution to create persistent identifiers linked to comprehensive behavioral profiles, and a data marketplace enabling the sale of sensitive personal information.") (quotation marks omitted); *Katz-Lacabe*, 668 F. Supp. 3d at 942 (finding reasonable expectation of privacy allegedly violated when defendant accumulated "a vast repository of personal data" from defendant's tracking software, which was used to advertise); *see also Gilligan*, 2026 WL 32259, at *2 (finding reasonable expectation of privacy against "unauthorized widespread tracking and data collection, allowing [defendant] to compile detailed profiles of each [p]laintiff's online web browsing activity tied to their email address and other personal identifiers, and that [defendant] continues to track 'future web browsing activity across the internet.'"). Just as in these

cases, Caldwell has a reasonable expectation of privacy in the wide-ranging data that InMobi captured and enriched. *In re Facebook*, 956 F.3d at 604 n.7 (acknowledging "individuals maintain the expectation that entities will not be able to collect such broad swaths of personal information absent consent.").

InMobi urges the Court to take a different tack, asserting that none of the information it collects individually identifies Caldwell. (Mem. at 11.) The factual allegations of the complaint bely this anonymity argument. The point of InMobi's software is to collect granular information from Caldwell's on- and offline life, which it enriches with third-party data, thereby enabling a link to his real-world identity. (FAC ¶¶ 1, 4, 19–21, 32–33, 54, 71, 79.) This allows InMobi to build as comprehensive a profile as possible on him to use to sell precisely targeted advertisements. (*Id.* ¶ 23.) Unsurprisingly, ad exchange defendants have deployed this argument before. It has not been successful with courts nevertheless finding a reasonable expectation of privacy in such information. *See Semien*, 2026 WL 216333, at *5, *11 (recognizing defendant assigns and links individuals' unique user IDs to allow tracking across internet, rendering anonymity argument "functionally meaningless") (citation omitted); *Riganian*, 791 F. Supp. 3d at 1087 ("The Court does not find [defendant's] 'pseudonymization' argument persuasive. . . . "). In any event, challenges to the function of InMobi's software are not appropriately resolved on a motion to dismiss. *Jackson v. Fandom, Inc.*, No. 22-CV-04423-JST, 2023 WL 4670285, at *5 (N.D. Cal. July 20, 2023).

Paradoxically, InMobi also contends that it doesn't collect *enough* data for Caldwell to have a reasonable expectation of privacy in that aggregated profile. (Mem. at 12 (asserting that it collects "bits and pieces" of data).) InMobi does not address *Facebook* or its progeny at all. It ignores the FAC's allegations that trace the massive scope of InMobi's individualized data collection and aggregation, instead treating this as a case where just one or two data points are at issue. For example, *Mitchener v. CuriosityStream, Inc.*, No. 25-CV-01471-NW, 2025 WL 2272413 (N.D. Cal. Aug. 6, 2025) only involved the alleged collection of an IP address. The plaintiff failed to allege that the defendant actually used that information along with other data to build detailed profiles, *id.* at *3–4—which Caldwell alleges here and that is protectable, *see Shah*, 754 F. Supp. 3d at 932

(recognizing collection of IP addresses actionable when it allowed defendant to downstream identifying information that allowed targeted advertising).

Cases like *In re Google Location History Litigation* are inapposite. 428 F. Supp. 3d 185, 198 (N.D. Cal. 2019). Google only collected "bits and pieces" of activity within Google's ecosystem when they were running, and there were no allegations of using such information to build a profile of the user beyond their use of Google's services. *Id.* at 197–98. Besides predating *In re Facebook*, it lacks the type of massive collection and aggregation outside of just one app that InMobi's software is alleged to execute, including identifying other apps that are running on the phone, and using offline and third-party data sources, like identity resolution partners, to build up profiles on individuals even once their digital interactions have ceased. (FAC ¶¶ 19, 54.) Additionally, *Google* involved first-party app operators collecting data from users who affirmatively chose to use Google's services—not invisible third-party surveillance operated by a company users have no relationship with and don't know exists, like InMobi's practices here. (*Id.* ¶¶ 81, 88, 99–100.) Courts have not hesitated to distinguish *Google* based on these grounds. For example, in *FTC v. Kochava, Inc.*, a data broker was alleged to have "provide[d] its customers with vast amounts of essentially non-anonymized information about millions of mobile device users' past physical locations, personal characteristics (including age, ethnicity, and gender), religious and political affiliations, marital and parental statuses, economic statuses, and more." 715 F. Supp. 3d 1319, 1325 (D. Idaho 2024). Looking to *In re Facebook*, the court distinguished *Google*, recognizing the defendant "does not merely sell 'bits and pieces' of data that are available through other lawful means. Rather, it sells 'data designed to give its customers a '360-degree perspective' on the unique traits of millions of individual device users.'" The court thus found plaintiff claimed an "invasion of privacy—which is substantial both in quantity and quality." *Id.* (citation omitted); *Gilligan*, 2026 WL 32259, at *2 (privacy injuries alleged when defendant "developed extensive profiles that were disclosed on a large scale and sold commercially.").

Nor does it matter that some discrete data points may not be private in and of themselves; using that data to create and build up a detailed dossier *does* implicate a protectable privacy interest. *See U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 500 (1994) ("An individual's interest

in controlling the dissemination of information regarding personal matters does not dissolve simply because that information may be available to the public in some form."); *Brooks v. Thomson Reuters Corp.*, No. 21-CV-01418-EMC, 2021 WL 3621837, at *9 (N.D. Cal. Aug. 16, 2021) ("The Supreme Court has held that compiling disparate pieces of information about a person into a single dossier, even if the individual pieces of information are publicly available, constitutes a significant invasion of privacy.") (citing *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 763 (1989)); *see also In re Facebook*, 956 F.3d at 603 (emphasizing the importance of examining "whether the data itself is sensitive *and* [] the manner it was collected").

Finally, InMobi contends that Caldwell has no privacy interest because he enabled location access in the dating app he was using. (Mem. at 12.) This mangles the consent inquiry. As *Shah* recognized, "consent is 'generally limited to the specific conduct authorized.'" 754 F. Supp. 3d at 931–32. Thus, a user who discloses one piece of information to a website operator to use the website, "does not necessarily consent to disclose their IP address to the third parties operating the [t]rackers." *Id.* at 932; *Fregosa*, 2025 WL 2886399, at *7 (same). This case is thus distinguishable from cases like *Saleh v. Nike, Inc.*, where the plaintiff intentionally sent information connected to his purchase to Nike to facilitate that purchase. 562 F. Supp. 3d 503, 524 (C.D. Cal. 2021). Here, InMobi is even further removed. Plaintiff was not on InMobi's website or attempting to use InMobi's services. Plaintiff had no idea that InMobi was operating in the background in the dating app he was using. (FAC ¶ 50.) Thus, while he consented to share his location with potential matches, he did not and could not have affirmatively consented to share his identifying information with a software maker he did not know existed, nor to InMobi's downstream enrichment and sale of his information to other third parties for precisely targeted advertising. (*Id.* ¶¶ 41–42, 81, 97.) This type of aggregation and additional downstream data sharing was not at issue in *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1092 (N.D. Cal. 2018). Caldwell has sufficiently alleged a reasonable expectation of privacy. *Riganian*, 791 F. Supp. 3d at 1087 ("[T]he Court here cannot conclude at the pleading stage that [p]laintiffs had no reasonable expectation of privacy in the information that [defendant] compiled across hundreds to thousands of disparate online and offline sources and then sold to third parties without their knowledge or consent."). And again, questions of

consent are ill-suited to resolution on a motion to dismiss. *Semien*, 2026 WL 216333, at *7.

**B. InMobi's Massive Surveillance Is Highly Offensive to a Reasonable Person.**

InMobi's last argument is that Caldwell does not allege InMobi's conduct is highly offensive to a reasonable person. (Mem. at 13–15.) InMobi is wrong. Caldwell sufficiently alleges how InMobi's intrusions are unacceptable and violate social norms. *See In re Facebook*, 956 F.3d at 606.

"Determining whether a defendant's actions were 'highly offensive to a reasonable person' requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *Id.* (quoting *Hernandez*, 47 Cal. 4th at 287). Notably, this is an inquiry that is ill-suited for resolution at the motion to dismiss stage. *In re Facebook, Inc., Consumer Priv. User Profile Litig*., 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) ("Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is."); *Gilligan*, 2026 WL 32259, at *2–3; *Katz-Lacabe*, 668 F. Supp. 3d at 942.

Here, Caldwell alleges how InMobi covertly collected his app usage and device identifier information, linked it to his real-world, offline identity through an identity resolution service, and created a persistent advertising profile that revealed, among other things, his sexual orientation. (*See* FAC ¶ 54.) Courts have repeatedly found that allegations like these "satisfy the requirement for a 'highly offensive' intrusion that invades reasonable internet users' expectations of privacy." *Gilligan*, 2026 WL 32259, at *2; *Semien*, 2026 WL 216333, at *7 (finding that "at this stage, the Court cannot conclude that [defendant's] conduct was not offensive"); *Riganian*, 2025 WL 2021802, at *7 ("[T]he Court cannot at this stage conclude as a matter of law that the alleged aggregation, synthesis, and sale of comprehensive online and offline data of individuals without their knowledge is not highly offensive.").

InMobi attempts to brush all of this away, claiming the FAC alleges nothing more than "routine, commercial activity for the purposes of advertising." (Mem. at 13, 15.) InMobi again points to circumstances that did not involve the type of pervasive online tracking and offline data

supplementation at issue here. *See Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986, 992 (2011) (collecting only mailing address); *Saleh*, 562 F. Supp. 3d at 525 (collecting browsing information only on Nike website related to actions on Nike website). *In re iPhone Application Litigation*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (collecting data from app on Apple app store) and *In re Google, Inc. Privacy Policy Litigation*, 58 F. Supp. 3d 968, 985 (N.D. Cal. 2014) (disclosing "common, basic digital information") not only predate *In re Facebook*, but courts have found them "unpersuasive" based on their "lack of consideration for California's privacy norms." *Williams v. Facebook, Inc.*, 384 F. Supp. 3d 1043, 1054 (N.D. Cal. 2018) (citing *Opperman v. Path, Inc.*, 205 F. Supp. 3d 1064, 1079 (N.D. Cal. 2016)). *Yunker v. Pandora Media, Inc.*, besides only dealing with the sharing of certain device identifiers and predating *In re Facebook*, was based on the flawed reasoning in *In re iPhone Application Litigation.* No. 11-CV-113 JSW, 2013 WL 1282980, at *16 (N.D. Cal. Mar. 26, 2013). Caldwell's "allegations of data collection [] go well beyond the 'routine commercial behavior' of collecting contact information for sending advertisements." *Katz-Lacabe*, 668 F. Supp. 3d at 942; *Opperman*, 87 F. Supp. 3d at 1061 (N.D. Cal. 2014) (rejecting "routine commercial behavior" defense because the "'highly offensive'. . . . question is best left for a jury.").

Caldwell's claims for (i) intrusion upon seclusion and (ii) invasion of privacy under the California Constitution both survive.

**CONCLUSION**

For the foregoing reasons, InMobi's motion to dismiss should be denied in its entirety.

Respectfully submitted,

**JAMES CALDWELL,** individually and on behalf of all others similarly situated,

Dated: February 9, 2026

By: /s/ Brandt Silverkorn

Brandt Silverkorn (SBN 323530)
bsilverkorn@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300

Fax: 415.373.9435

*Counsel for Plaintiff and the Putative Class*