TYLER G. NEWBY (CSB No. 205790)
tnewby@fenwick.com
NIKKI SEICHEPINE (CSB No. 359475)
nseichepine@fenwick.com
FENWICK & WEST LLP
One Front Street, 33rd Floor
San Francisco, CA 94104
Telephone: 415.875.2300
Facsimile: 650.938.5200

JANIE YOO-SCOTT (CSB No. 312715)
jyooscott@fenwick.com
FENWICK & WEST LLP
1155 F Street NW, 12th Floor
Washington, DC 20001
Telephone: 202.970.3000

JOAN LIU-KIM (CSB No. 342130)
joanieliu-kim@fenwick.com
FENWICK & WEST LLP
801 California Street
Mountain View, CA 94041
Telephone: 650.988.8500

Attorneys for Defendant
INMOBI PTE LTD.

FENWICK & WEST LLP
ATTORNEYS AT LAW

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

JAMES CALDWELL, individually and on behalf of all others similarly situated,

Plaintiff,

v.

INMOBI PTE LTD., a foreign limited company,

Defendant.

Case No.: 3:25-cv-09977-AMO

**INMOBI PTE LTD.'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**

Date: May 7, 2026
Time: 2:00 p.m.
Dept: Courtroom 10, Floor 19
Judge: Hon. Araceli Martínez-Olguín

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................ 1

II. LEGAL ARGUMENT ........................................................ 2

A. Caldwell's Failure To Identify The App At Issue Is A Fatal Pleading Flaw For All Claims. ........................................................ 2

B. Caldwell Fails To Plead A Claim Under CIPA Section 638.51. ........................................................ 3

1. Caldwell's Interpretation Of CIPA Section 638.50 Ignores The Remaining Text Of The Same Provision And Expands CIPA To Unintended Technologies. ........................................................ 3

2. Caldwell's Broad Reading Of The Statute Would Be Unworkable. ........................................................ 6

3. The Complaint Fails To Allege Interception Of Dialing, Routing, Addressing, Or Signaling Information Of A Wire Or Electronic Communication. ........................................................ 8

C. Caldwell Fails To State A Claim For Intrusion Upon Seclusion Or Violation Of The California Constitution. ........................................................ 10

1. The FAC Fails To Allege A Reasonable Expectation Of Privacy. ........................................................ 10

2. Caldwell's Cited Authority Concern Materially Different Technology. ........................................................ 12

3. Caldwell Fails To Allege The InMobi SDK's Data Collection Was Highly Offensive. ........................................................ 14

III. CONCLUSION ........................................................ 15

FENWICK & WEST LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 2

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 2

*Doe v. Eating Recovery Ctr. LLC*,
No. 23-cv-05561-VC, 2025 WL 2971090 (N.D. Cal. Oct. 17, 2025) ........ 5

*Fregosa v. Mashable, Inc.*,
No. 25-cv-01094-CRB, 2025 WL 2886399 (N.D. Cal. Oct. 9, 2025) ........ 2

*Gabrielli v. Motorola Mobility LLC*,
No. 24-cv-09533-JST, 2025 WL 1939957 (N.D. Cal. July 14, 2025) ........ 9, 13

*Gilligan v. Experian Data Corp.*,
No. 25-cv-02873-RFL, 2026 WL 32259 (N.D. Cal. Jan. 6, 2026) ........ 5, 13

*Gilligan v. Experian Data Corporation*,
2025 WL 2556313 (N.D. Cal. July 11, 2015) ........ 5

*Gutierrez v. Converse Inc.*,
No. 24-4797, 2025 WL 1895315 (9th Cir. July 9, 2025) ........ 5

*Harris v. iHeartMedia, Inc.*,
No. 25-cv-06038-EKL, 2026 WL 247875 (N.D. Cal. Jan. 29, 2026) ........ 2

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ........ 12, 14

*In re Saldana*,
122 F.4th 333 (9th Cir. 2024) ........ 3

*In re Zynga Litig.*,
750 F.3d 1098 (9th Cir. 2014) ........ 4, 5

*Katz-Lacabe v. Oracle America, Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023) ........ 13

*Larkin v. Workers' Comp. Appeals Bd.*,
358 P.3d 552 (Cal. 2015) ........ 7

*Mirmalek v. L.A. Times Commc'ns LLC*,
No. 24-cv-01797-CRB, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ........ 2

*Moody v. C2 Educ. Sys. Inc.*,
742 F. Supp. 3d 1072 (C.D. Cal. 2024) ........ 3, 9

*Riganian v. LiveRamp Holdings, Inc.*,
791 F. Supp. 3d 1075 (N.D. Cal. 2025) ....................9, 10, 13, 14

*Rodriguez v. Autotrader.com, Inc.*,
762 F. Supp. 3d 921 (C.D. Cal. 2025) ....................3, 5

*Saleh v. Nike, Inc.*,
562 F. Supp. 3d 503 (C.D. Cal. 2021) ....................11

*Schallert v. Orkin LLC*,
No. 24STCV31244, 2025 WL 4332757 (Cal. Super. Dec. 15, 2025) ....................6

*Selby v. Sovrn Holdings, Inc.*,
No. 25-cv-03139-RFL, 2025 WL 2950164 (N.D. Cal. Oct. 17, 2025)....................5, 13

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ....................4, 6, 9, 12

*Walsh v. Dollar Tree Stores, Inc.*,
No. 25-cv-01601-SVK, 2025 WL 2939229 (N.D. Cal. Oct. 16, 2025) ....................2

*Yates v. United States*,
574 U.S. 528 (2015)....................7

**STATUTES**

Cal. Penal Code § 629.51(a) ....................8

Cal. Penal Code §§ 638.50–52.................... *passim*

FENWICK & WEST LLP
ATTORNEYS AT LAW

## I. INTRODUCTION

Caldwell's Opposition fails to confront the fundamental deficiencies in the First Amended Complaint ("FAC"). First, his failure to identify which app he used is fatal to his claims. Without naming the app or the disclosures he saw when he opted into sharing his location, the Court cannot assess whether he has adequately alleged any expectation of privacy or whether he has consented to the collection and sharing of information. The Court should dismiss the FAC on that basis alone.

Second, to avoid dismissal of his claim that InMobi's Software Development Kit "SDK" violates the pen register provision of the California Invasion of Privacy Act, Cal. Pen. Code §§ 638.50–51 ("CIPA"), he asks the Court to ignore the statute's language, structure, and legislative history and find that any data about a user's connection to the internet is covered by the statute. It is not, and the Court should not follow the trial court decisions that have adopted this overly broad interpretation of the statute. The pen register provisions of CIPA were designed to regulate the interception of destination "dialing, routing, addressing, or signaling information" in the context of telephone and electronic communications—i.e., the phone numbers dialed or recipients' email addresses—not the device-level information about a smartphone on which an app is installed. Caldwell's proposed interpretation of the statute would criminalize nearly all use of third-party analytics and marketing tools used by websites and mobile apps to perform site analytics and advertising. Such a sweeping interpretation would implicate even this Court's own website, which, as reflected in its disclosures and privacy policy on cand.uscourts.gov, shares browser data and IP address information from its visitors with Google for site analytics.

The Opposition's reliance on privacy cases involving website operators, data brokers, and companies that circumvented privacy controls only highlights the absence of comparable allegations here. InMobi is none of these. It is a mobile advertising network that provides an SDK to app developers who voluntarily integrate it to facilitate the display of relevant advertisements. The FAC does not allege that InMobi circumvented any privacy controls, operated without the app developer's knowledge, or collected data beyond what Caldwell voluntarily consented to in the app. And having chosen to share his location through a dating app, Caldwell cannot now claim to have a reasonable expectation of privacy in that same information.

FENWICK & WEST LLP
ATTORNEYS AT LAW

For these reasons, and those set forth in InMobi's opening brief, InMobi's motion to dismiss ("Motion") should be granted in its entirety.

## II. LEGAL ARGUMENT

### A. Caldwell's Failure To Identify The App At Issue Is A Fatal Pleading Flaw For All Claims.

Caldwell describes the app he used that contains the InMobi SDK as only "a dating app for gay individuals," without providing the app's name, its developer, or when he used it. FAC ¶ 7. Nor does he give any details about what disclosures he saw about the app's data collection and sharing practices when he chose the app from an app marketplace or when he first used it. This lack of specificity is not a minor pleading deficiency, it is fatal under *Iqbal* and *Twombly*, which requires "factual content" that is "plausible on its face" and "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Opposition fails to explain the deficiencies in the FAC, offering only generalized assertions such as "InMobi's software development kit functions across every app it integrates with" and that InMobi collects data from "all of the apps it is integrated in." Opp. at 7. Without identifying the specific app, Caldwell cannot establish that the app actually embedded InMobi's SDK, what data was transmitted to InMobi, or what disclosures or consent mechanisms the app provided—including whether the app notified users that it would share certain data with InMobi or other third parties. Thus, the FAC's vague allegations do not provide facts from which the Court may find the existence of a cognizable claim.

The cases Caldwell cites in his Opposition do not cure these deficiencies. Unlike here, those actions were brought against operators of websites named in the complaints, and the disclosures and policies of those websites could be compared against the complaint's factual allegations. *See Fregosa v. Mashable, Inc.*, No. 25-cv-01094-CRB, 2025 WL 2886399, at *1 (N.D. Cal. Oct. 9, 2025) (identifying the Mashable website); *Mirmalek v. L.A. Times Commc'ns LLC*, No. 24-cv-01797-CRB, 2024 WL 5102709, at *1 (N.D. Cal. Dec. 12, 2024) (identifying the LA Times website); *Harris v. iHeartMedia, Inc.*, No. 25-cv-06038-EKL, 2026 WL 247875, at *1 (N.D. Cal. Jan. 29, 2026) (identifying the iHeart website); *Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-

FENWICK & WEST LLP
ATTORNEYS AT LAW

SVK, 2025 WL 2939229, at *2 (N.D. Cal. Oct. 16, 2025) (identifying Dollar Tree Store's website); *Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 924 (C.D. Cal. 2025) (identifying the Autotrader website); *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1074 (C.D. Cal. 2024) (identifying the C2 Education website).

Caldwell's failure to identify the app he used is fatal to all of his claims, which are premised on his alleged expectations of privacy and lack of consent. This omission means that neither InMobi nor the Court can inquire as to his consent to any alleged tracking by examining the app's disclosures. And as the FAC concedes, app developers—not InMobi—choose to deploy the SDK in specific apps and obtain user consent. *See* FAC ¶ 41 ("Consumers have… no direct relationship with InMobi"); ¶ 42 ("InMobi does not directly seek user consent…"); *see also* ¶ 83 (same). Without naming the app, Caldwell's claim that his consent was limited solely to sharing information within the dating app rests on no factual foundation. Caldwell thus has no support for his theme throughout the FAC that InMobi's SDK "surreptitiously" gathered his sensitive information. *See* Opp. at 1–5, 9.

**B. Caldwell Fails To Plead A Claim Under CIPA Section 638.51.**

**1. Caldwell's Interpretation Of CIPA Section 638.50 Ignores The Remaining Text Of The Same Provision And Expands CIPA To Unintended Technologies.**

Caldwell's interpretation of CIPA Section 638.50 improperly renders much of that Section's language superfluous. *See In re Saldana*, 122 F.4th 333, 342 (9th Cir. 2024) (quoting *Corley v. United States*, 556 U.S. 303, 314 (2009) ("A core canon of statutory construction is the rule against surplusage: courts must construe a statute 'so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant.'"). Section 638.50 defines a pen register as a "device or process that records or decodes dialing, routing, addressing, or signaling information ***transmitted by*** an instrument or facility ***from which*** a wire or electronic communication is transmitted, but not the contents of a communication." Cal. Pen. Code § 638.50(b) (emphasis added). The most plausible interpretation of this definition refers to information identifying the intended destination of an electronic or wire communication. Mot. at 7–8. Historically, and in its simplest terms, this information is the phone numbers dialed by a phone

FENWICK & WEST LLP
ATTORNEYS AT LAW

on which a pen register is installed. More recently, it could refer to the recipient email addresses to which emails are sent by a computer or email account on which a pen register is installed. The pen register provision is the counterpart to the "trap and trace" provision, which is defined as a device or process "that captures the ***incoming*** electronic or other impulses that identify the ***originating number*** or other dialing, routing, addressing, or signaling information reasonably likely to identify ***the source*** of a wire or electronic communication." Cal. Pen. Code § 638.50(c) (emphasis added). A trap and trace device installed on a phone or computer captures the phone numbers of incoming calls to that device or the email addresses of incoming emails. The distinctions between the two provisions are clear, and neither applies to information about the device on which the alleged pen register or trap and trace device is installed, such as the phone number of the telephone that is making or receiving the calls, or the IP address of the computer from which a user is sending or receiving emails.

Caldwell espouses an interpretation of CIPA Sections 638.50 and 638.51 adopted by several federal district courts that erases the distinction between these statutory provisions and expands CIPA to unintended technologies. These cases apply CIPA Sections 638.50 and 638.51 generally to *any* data about the device, browser, or location that is visiting a website or using an app. Among those cases, Caldwell relies principally on the incomplete analysis in *Shah v. Fandom, Inc.*, to argue that the categories of data alleged in the FAC constitute "addressing information" under the pen register provision. Opp. at 6 (quoting *Shah*, 754 F. Supp. 3d 924, 929 (N.D. Cal. 2024) (asserting that "[a]ll that is required is that the Trackers record addressing information transmitted by the user's computer or smartphone in connection with the outgoing HTTP request… regardless of whether that addressing information pertains to the sender or the recipient of the communication at issue."). But *Shah* ignores Section 638.50's statutory scheme, which differentiates between destination dialing, addressing, routing, and signaling information and received information, and the Court should not follow its reasoning. In addition to failing to apply Section 638.50's text, *Shah* misapplied *In re Zynga Litig.,* 750 F.3d 1098, 1108 (9th Cir. 2014) in its determination of what constitutes "addressing information[.]" *See Shah*, 754 F. Supp. 3d at 929. In *In re Zynga*, the Ninth Circuit addressed the question of whether IP addresses were the contents of communications

FENWICK & WEST LLP
ATTORNEYS AT LAW

under an entirely different statute, the federal Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2523 ("ECPA"). *In re Zynga*, 750 F.3d at 1108 (citing *United States v. Forrester,* 512 F.3d 500, 510 (9th Cir. 2008)). The court held that IP addresses were non-content "addressing information," much like what is written on the outside of an envelope rather than the contents of the letter inside the envelope. *See id.* But *In re Zynga* did not concern CIPA Section 638.50 and did not address whether that law's pen register provision applies only to the *destination* IP address of electronic communications from a device on which the pen register is installed.

Other federal cases relied on by Caldwell borrow this same flawed interpretation, and most of these opinions rely solely on past decisions to justify their holdings without looking to the statute's text, structure, or legislative history. *See, e.g.*, *Gilligan v. Experian Data Corp.*, No. 25-cv-02873-RFL, 2026 WL 32259, at *4 (N.D. Cal. Jan. 6, 2026) (limiting its analysis to the fact that "this Court previously found that similar internet tracking technology qualifies as a pen register"); *see also Selby v. Sovrn Holdings, Inc.*, No. 25-cv-03139-RFL, 2025 WL 2950164, at *4 (N.D. Cal. Oct. 17, 2025) (simply stating "the Court has previously found that similar internet tracking technology qualifies as a pen register"). This Court should not join these cases' incomplete and flawed interpretation of CIPA Section 638.50.

These interpretations are not uniform, and courts have recognized conflicting opinions on whether CIPA's pen register and trap and trace provisions apply to internet advertising technologies. *See, e.g., Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 929 (C.D. Cal. 2025) (acknowledging differing opinions from state courts); *Gilligan v. Experian Data Corporation*, 2025 WL 2556313 (N.D. Cal. July 11, 2015) (collecting cases). Even one Ninth Circuit judge has indicated skepticism that CIPA applies to online activities. *See Gutierrez v. Converse Inc.*, No. 24-4797, 2025 WL 1895315, at *3 (9th Cir. July 9, 2025) (Bybee, J., concurring) (explaining the California Consumer Privacy Act of 2018 "likely covers the allegations here" and questioning why so many plaintiffs "prefer to contort § 631(a) to apply to internet communications..."); *see also Doe v. Eating Recovery Ctr. LLC,* No. 23-cv-05561-VC, 2025 WL 2971090, at *7 (N.D. Cal. Oct. 17, 2025) ("As difficult as it is to apply CIPA to the physical world, it's virtually impossible to apply it to the online world.").

And recently, the Second District of the California Court of Appeals issued an order to show cause on why a defendant's writ petition from an order overruling its demurrer to a CIPA Section 638.51 claim over the use of website pixels should not be granted. *See* Reply Declaration of Tyler Newby, ¶ 2, Ex. 1 (Petition for Writ of Mandate); *id.* ¶ 3, Ex. 2 (Order to Show Cause). As noted in the writ petition, the Legislature knows how to use express language to describe online activities and has done so in recent years. The broad application of CIPA to apply to internet technologies conflicts with the California Consumer Privacy Act of 2018 ("CCPA"), which "explicitly and comprehensively addresses" issues related to of online data privacy. *See id.* Ex. 1 at 45–47.

Contrary to Caldwell's argument, the CIPA Section 638.51's language and meaning is far from plain, as evidenced by courts' conflicting interpretations and applications of it to internet technologies. Because the statute is ambiguous as applied to commercial internet technologies, examining its legislative history is necessary to interpret its scope. As detailed in the Motion, the legislative history and statutory context confirm that CIPA was never intended to apply expansively to technology such as InMobi's SDK. Mot. at 5–8; *see also Schallert v. Orkin LLC,* No. 24STCV31244, 2025 WL 4332757, at *4 (Cal. Super. Dec. 15, 2025) ("Nowhere in that history is there any indication, whatsoever, that the Legislature as a whole, any member of the Legislature, or any third party, intended 'trap and trace' devices, as defined in section 638.51, to apply to website tracking software ... The overarching purpose of AB 929 appears to have been to allow law enforcement officers to use [such] devices to monitor telephonic communication, consistent with federal law and after obtaining a court order.").

**2. Caldwell's Broad Reading Of The Statute Would Be Unworkable.**

Caldwell relies on *Shah* to argue that the law enforcement authorization provision (CIPA Section 638.52) is not relevant here. *See* Mot. at 8; Opp. at 6–7. But if *Shah* and its progeny were correct, the statutory scheme would produce a result the Legislature could not have intended. It would follow that: (1) Section 638.51 would apply broadly, such that the "pen register" definition would cover all new and evolving tracking technologies that collect IP addresses from users (*see Shah,* 754 F. Supp. 3d at 933); (2) Section 638.52 would impose a court-order requirement *only* on pen registers physically attached to telephone lines (*id.* at 930) (stating that § 638.52 "merely lists

requirements relating to *a particular type of pen register*: one that is installed on a telephone line…") (emphasis added); and (3) by this logic, law enforcement could freely deploy *all other types of pen registers*—such as devices to obtain header information from email addresses, IP tracking tools, mobile app SDKs, or other non-telephone technologies—*without any judicial oversight*. This reading would lead to an absurd interpretation in which the Legislature purportedly sought to protect privacy with an extremely broad definition of a "pen register" but then carved out a sweeping exemption, permitting warrantless surveillance whenever the device is not physically attached to a telephone line.

The statute itself forecloses this interpretation. Section 638.51 expressly provides that "a person may not install or use a pen register or a trap and trace device *without first obtaining a court order* pursuant to Section 638.52[.]" There is no textual basis to restrict the court-order requirement to only some pen registers. Reading the statute to encompass InMobi's technology in the definition of "pen register," while simultaneously rendering it impossible to obtain the required court order because the technology does not involve a "telephone line" (which is required information for obtaining such an order), produces an absurd result that would criminalize operation of nearly every website and advertising technology. Caldwell's argument that Section 638.52 is inapplicable to this case because it addresses only law enforcement authorization procedures misses the point. It is a well-established canon of statutory construction that a statute should be read as a whole. Each provision must be interpreted in harmony with the others to effectuate the Legislature's intent. Mot. at 8; *Larkin v. Workers' Comp. Appeals Bd.*, 358 P.3d 552, 555 (Cal. 2015) (stating a court shall "consider the ordinary meaning of the language in question ***as well as*** the text of related provisions, terms used in other parts of the statute, and the structure of the statutory scheme.") (emphasis added).

The Court's role here is not to determine whether the text of the pen register provision can conceptually or technically apply to InMobi's SDK. Rather, the Court must use well-established canons of statutory construction to effectuate the Legislature's intent in enacting CIPA to avoid an interpretation that leads to absurd results. *See, e.g., Yates v. United States*, 574 U.S. 528, 537, 539–43 (2015) (interpreting "tangible object" in light of surrounding terms and statutory context to mean



FENWICK & WEST LLP
ATTORNEYS AT LAW

evidence-related items akin to documents and records, thereby narrowing the term from its literal breadth). This Court should decline to adopt Caldwell's reading, which would create disharmony between related provisions and undermine the Legislature's evident intent to address surveillance technology traditionally attached to phone lines.

In sum, Caldwell's expansive reading of the statute divorces Section 638.51 from its related provisions, produces an absurd and unworkable result, and this Court should not adopt such flawed interpretations or analysis.

### 3. The Complaint Fails To Allege Interception Of Dialing, Routing, Addressing, Or Signaling Information Of A Wire Or Electronic Communication.

To state a claim for violation of CIPA Section 638.51, Caldwell must allege InMobi intercepted dialing, routing, addressing, of signaling information contemporaneously with electronic or wire communications. Caldwell alleges the InMobi SDK functions as a pen register because it "records or decodes dialing, routing, addressing or signaling information, including specifically Plaintiff's and the Class members' timestamped geolocation data, mobile advertising IDs, IP addresses, and other device fingerprinting details transmitted in outgoing electronic communications by their devices." FAC ¶ 68. The FAC fails because it neither alleges what Caldwell's "electronic communications" are when he used the unidentified app, nor does it allege that the SDK intercepted the dialing, signaling, addressing or routing information of the destination of those unidentified communications.

First, the FAC does not identify what electronic communications Caldwell sent when the InMobi SDK allegedly intercepted his dialing, routing, addressing, or signaling information. For example, the FAC does not allege InMobi captured this information when Caldwell communicated with other users on the unidentified dating app. To the extent Caldwell alleges that his location information, which he alleges InMobi tracks, is an "electronic communication" within the statute's meaning, the statute forecloses that argument. *See* FAC ¶¶ 51, 53, 55; Opp. at 1–3, 6. Section 638.50 adopts the definition of "electronic communication" in Section 629.51, which excludes from its definition "any communications from a tracking device." Cal. Penal Code § 629.51(a)(2)(C), (a)(3). A "tracking device" is "an electronic or mechanical device that permits the tracking of the

movement of a person or object." *Id.* Caldwell does not allege any other "electronic communications" from which InMobi allegedly captured the related dialing, routing, addressing or signaling information. Thus, to the extent Caldwell bases his Section 638.51 claim on location data tracking, he has pleaded himself out of a case.

Second, the mobile advertising identifiers, IP addresses, and other device data that Caldwell alleges InMobi's SDK collects from his unnamed app are untethered to communications, such as search queries or navigation throughout a website. Nearly every case Caldwell cites concerns information transmitted by individuals' web browsers as users navigate from page to page within a website. Those cases concerned the alleged interception of addressing and routing data such as website URLs and browser information collected by cookies, pixels, and embedded trackers as visitors entered web page addresses or navigated within or across different websites. *See, e.g.*, *Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1081 (N.D. Cal. 2025) (alleging the defendant deployed cookies "placed on users' devices to track web browsing and connect activity"); *Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 WL 1939957, at *1, *9–10 (N.D. Cal. July 14, 2025) (alleging "cookies collect detailed information about users' activity on the website"); *Shah*, 754 F. Supp. at 929 (involving "trackers" that "record addressing information transmitted by the user's computer or smartphone in connection with the outgoing HTTP request to [the defendant's] website"); *Moody,* 742 F. Supp. 3d at 1075 (alleging website tracker collected "tracking, and URL tracking" on website).

By contrast, the FAC states only that InMobi's SDK operates within a single mobile app and vaguely alleges that InMobi builds "profiles" from the collected device-level data which include "sensitive details" such as demographics, sexual orientation, and political leanings for ad targeting. FAC ¶¶ 5, 23, 37, 54, 79, 92, 94. This is not dialing, addressing, signaling or routing information connected to a wire or electronic communication. Caldwell does not allege that InMobi tracked his browsing activity across websites, monitored his web browsing history, or used cookies or pixels to follow him across the internet to his private internet destinations. Accordingly, Caldwell's failure to identify the app or establish the scope of his consent leaves his claims speculative and provides no proper notice to InMobi or this Court of the basis for his

FENWICK & WEST LLP
ATTORNEYS AT LAW

claims.

Third, Caldwell's own device's identifiers are not the destination dialing, addressing, signaling and routing information the pen register provision of Section 638.51 covers. In its Motion, InMobi demonstrated that the pen register provision at issue targets destination identifiers, not generalized source identifiers such as IP addresses or device-level metadata. The FAC does not allege the SDK intercepts the incoming or the outgoing dialing, addressing, signaling or routing information of communications. The FAC alleges only that InMobi received information about Caldwell's device on which the app that includes the SDK is installed. Caldwell cannot and does not dispute this in his Opposition.

### C. Caldwell Fails To State A Claim For Intrusion Upon Seclusion Or Violation Of The California Constitution.

Caldwell's principal argument against dismissal of his common law and California constitutional invasion of privacy claims is that the claims are too fact-laden to be decided on the pleadings. *See* Opp. at 13–14. But courts regularly decide whether a complaint adequately alleges that conduct is "highly offensive" and was without the plaintiff's consent at the motion to dismiss stage. If the allegations "show no reasonable expectation of privacy or an insubstantial impact on privacy interests," the Court can adjudicate the "question of a serious or highly offensive invasion" as a matter of law. *Riganian*, 791 F. Supp. 3d at 1088 (citing *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 26 (1994)).

#### 1. The FAC Fails To Allege A Reasonable Expectation Of Privacy.

The FAC alleges that InMobi receives commonplace categories of information that businesses have long collected for advertising purposes. These allegations fail to plead that Caldwell had a reasonable expectation of privacy or that the operation of InMobi's SDK was "highly offensive" or a "serious invasion" of Caldwell's privacy. The Opposition contends InMobi's Motion "ignores the trove of other data InMobi secretly collects," but the FAC allegations Caldwell cited in support of this claim only bolster InMobi's position. *See* Opp. at 9 (citing FAC ¶¶ 18–21). For example, paragraph 18 simply restates the same categories of information addressed by InMobi's Motion—"geolocation, mobile advertising IDs, IP address, device information…and

FENWICK & WEST LLP
ATTORNEYS AT LAW

other information that can fingerprint a user or device"—without alleging any facts showing that such information was actually collected from Caldwell. Caldwell alleges that InMobi "can also detect which other apps are installed," but there are no non-speculative, factual allegations that InMobi actually does this, or did this as to Caldwell. FAC ¶ 19. The FAC suggests the possibility that "the presence of multiple fitness apps *may* trigger categorization as a target for nearby gym memberships" but a person showing interest in fitness would hardly consider that sensitive or personally identifying information, especially when that information is not tied in any way to identify Caldwell in the non-virtual world. *Id.* (emphasis added). The FAC further postulates that InMobi "*can* merge multiple identifiers into a single, unified profile for each user," but again, the FAC fails to allege that InMobi actually undertook these actions as to Caldwell, rendering this hypothetical irrelevant here. *Id.* ¶¶ 20–21 (emphasis added). Indeed, these vague and speculative statements do not plausibly allege the "surreptitious" collection of a "trove of other data," or any conduct that violates a reasonable expectation of privacy. *See* Opp. at 9.

Caldwell's arguments that InMobi lacked consent also fail as a matter of law. With respect to location data, Caldwell argues that he consented only to share his consent with the unnamed app in which InMobi's SDK was installed. But Caldwell admits he enabled location access in his dating app for the express purpose of finding nearby users as "potential matches[.]" Opp. at 13. Contrary to Caldwell's assertion, the present case is exactly like *Saleh v. Nike, Inc.*, "where the plaintiff intentionally sent information connected to his purchase to Nike to facilitate that purchase." Opp. at 13 (citing 562 F. Supp. 3d 503, 524 (C.D. Cal. 2021)). As the plaintiff did in *Saleh*, Caldwell voluntarily sent his location information to the dating app to facilitate the functionalities of the app. Having disclosed this information to the app publisher and strangers using the app for his own use and benefit, Caldwell cannot plausibly claim a reasonable expectation of privacy in that same location data. *See* Mot. at 12–13; *Saleh*, 562 F. Supp. 3d at 525 (holding no reasonable expectation of privacy and noting courts have been "hesitant to extend the tort of invasion of privacy to the routine collection of personally identifiable information as part of electronic communications.").

And as discussed above, the FAC's vague allegations fail to identify the scope of Caldwell's consent as to any allegedly collected information, leaving the Court unable to determine whether

the alleged use of his data exceeded agreed upon bounds. Accordingly, Caldwell's reliance on *Shah* to claim that "consent is 'generally limited to the specific conduct authorized'" is inapposite, as the complaint in *Shah* did not suffer from the fatal pleading deficiencies present here. *See* Opp. at 8, 13 (citing *Shah*, 754 F. Supp. 3d at 929, 931–32).

**2. Caldwell's Cited Authority Concern Materially Different Technology.**

None of the cases Caldwell relies on establish that "courts have found a reasonable expectation of privacy in nearly the exact same scenario presented here…" Opp. at 10. First, Caldwell's heavy reliance on *In re Facebook* is misplaced, as that case involved comprehensive cross-platform surveillance that cannot be compared to the allegations of the FAC. *See* Opp. at 9–15. Facebook was alleged to continuously track its users' online activity and private browsing history through the cookies it placed on users' internet browsers, which tracked the users even after they logged off from the social media platform. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 596–97 (9th Cir. 2020). Facebook further embedded third-party plug-ins, such as Facebook's "Like" button, on third-party webpages, where a user's activity on the other pages containing the plug-in would be sent back to Facebook regardless of whether the user was logged into Facebook. *Id.* Facebook then compiled these histories—with referer headers (which includes "the name of the web page and the search terms that the user used to find it") and other off-platform browsing data—into personal profiles containing the users' likes, dislikes, interests, and habits over significant periods of time. *Id.* Facebook allegedly matched data collected on users while they were logged out of Facebook with information from their Facebook profiles, which could include the user's full name, employment history, and political religious affiliations. *See id.* at 598–99. Further, the complaint contained detailed allegations about Facebook's misleading descriptions of what information it collected. *Id.* at 602 (quoting Facebook's Help Center page stating "If you log out of Facebook, we will not receive this information about partner websites…").

Here, the FAC alleges nothing of the sort. Caldwell has not even identified the app at issue, let alone what disclosures it made, or whether he saw any notice that the app shared data with advertising technology providers such as InMobi. The FAC does not claim InMobi tracked Caldwell when he was not using the app. And unlike Facebook's alleged continuous surveillance,

FENWICK & WEST LLP
ATTORNEYS AT LAW

InMobi's SDK operates only "when a user enables location access within an app containing the SDK," which Caldwell admits he did to enhance the app's dating services. FAC ¶ 31.

The other cases Caldwell cites are similarly inapplicable. In *Gabrielli v. Motorola Mobility LLC*, the plaintiff explicitly clicked "Reject All non-essential cookies," yet Motorola allegedly ignored this rejection—an "outright lie" by the defendant. No. 24-cv-09533-JST, 2025 WL 1939957, at *1 (N.D. Cal. July 14, 2025). No such allegation exists here. Again, Caldwell did not reject tracking; he affirmatively enabled location access in his dating app, and InMobi made no direct representations to him, nor was there any "Reject All" option that InMobi disregarded. *See* FAC ¶ 31.

Similarly, in *Selby v. Sovrn Holdings, Inc.*, the plaintiffs "alleged that Sovrn engages in unauthorized widespread tracking and data collection, allowing it to compile detailed profiles of each Plaintiff's online web browsing activity—including highly sensitive browsing activity—tied to their email address and other personal identifiers." 2025 WL 2950164, at *3. The same is true of *Gilligan v. Experian Data Corp.*, where the defendants were alleged to have engaged in "unauthorized widespread tracking and data collection" enabling them to compile detailed profiles of plaintiffs' online browsing activity tied to email addresses and other personal identifiers, and to continue tracking future browsing activity across the internet. 2026 WL 32259, at *2. Those cases are inapposite because here, Caldwell makes only conclusory allegations that InMobi collected personal identifiers and fails to allege InMobi tied his data to any personal identifiers. And *Katz-Lacabe v. Oracle America, Inc.*, involved a "vast repository of personal data" built from seven tracking technologies, incorporating offline purchase data, cross-device tracking, data from over sixty-five third-party brokers, and the direct collection of health information, while *Riganian* involved extensive aggregation of online and offline data from multiple sources. *See* 668 F. Supp. 3d 928, 935–36, 942 (N.D. Cal. 2023); 791 F. Supp. 3d at 1081. InMobi's alleged collection is far narrower—limited to device metadata from in-app use—and, unlike Oracle's "cradle-to-grave" profiling, does not combine "browsing activity, online communications, *and* offline activity" into user profiles. *See Katz-Lacabe*, 668 F. Supp. 3d at 942 (emphasis in original).

In stark contrast to each of these cases, Caldwell has not alleged that InMobi links any of

FENWICK & WEST LLP
ATTORNEYS AT LAW

the data it collects to personal identifiers such as his name or email address. Caldwell's vague references to tracking of "in-app behavior" and "online activity" are not even tied to any allegation that such data was collected from him personally. *See, e.g.,* FAC ¶¶ 5, 38. Nor has he asserted that InMobi has created profiles capable of tracking his entire browsing history across the internet. These factual gaps underscore that the Opposition's cited authorities do not remotely describe "nearly the exact same scenario" as alleged here.

### 3. Caldwell Fails To Allege The InMobi SDK's Data Collection Was Highly Offensive.

The FAC's allegations fall far short of alleging highly offensive and intrusive conduct in contravention of societal norms. As demonstrated above, Caldwell's vague allegations that InMobi disclosed his location and device-level information, without any meaningful factual claim that it was linked to his name or personal identifiers, is fundamentally different from the website-based tracking cases relied on in the Opposition. *Compare Riganian*, 791 F. Supp. 3d at 1081 (allegations that the defendant constructed profiles by linking data to "offline" identifiers such as names, phone numbers, postal addresses, Social Security numbers, and driver's license records) *with* FAC ¶¶ 38, 54, 88, 100 (providing no facts supporting how InMobi allegedly linked any of the data collected to Caldwell's real-world identity beyond conclusory assertions that it was). The FAC plainly concedes the SDK collects data only "[w]hen a user opens or uses an app containing InMobi's SDK" and transmits data "each time the app is opened." FAC ¶¶ 16, 17, 31. This limited, in-app data collection from a single unidentified app is nothing like the pervasive, cross-platform tracking of user activities both on and off a website that was alleged in cases such as *LiveRamp* or *In re Facebook*.

Nothing in the FAC or Opposition explains how any of the data allegedly collected by InMobi identifies Caldwell's real-world identity. Opp. at 10–11; FAC ¶¶ 1, 4, 32–33, 79. Even viewed in the light most favorable to Caldwell, bits of information about an anonymous IP address and certain metadata from Caldwell's Android device cannot constitute "highly offensive" intrusions that violate social norms absent allegations that anyone could connect such "sensitive information" to "James Caldwell." The FAC offers only speculative and unsupported conclusions

that InMobi matched allegedly collected data to his identity, or compiled a "detailed" personal profile. FAC ¶¶ 19–21, 54, 71. In sum, the FAC contains no factual allegations beyond speculation that InMobi actually conducted surveillance on any user's device, drew specific inferences, or used such inferences to create a real-world identifiable profile. Therefore, the FAC allegations cannot plausibly support a claim that the information allegedly collected and shared was highly offensive in violation of any rights to privacy.

## III. CONCLUSION

For the reasons stated above, the Court should dismiss the FAC in its entirety.

Dated: February 27, 2026

FENWICK & WEST LLP

By: /s/ *Tyler G. Newby*
Tyler G. Newby
tnewby@fenwick.com

Attorneys for Defendant
INMOBI PTE LTD.

FENWICK & WEST LLP
ATTORNEYS AT LAW