UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES CALDWELL,<br><br>                    Plaintiff,<br><br>        v.<br><br>INMOBI PTE LTD.,<br><br>                    Defendant. | Case No. 25-cv-09977-AMO<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>Re: Dkt. No. 18 |

Plaintiff James Caldwell brings this putative class action against Defendant InMobi Pte., Ltd., a digital advertising technology company that offers mobile app developers tools, through its software development kit, to monetize user traffic.  Caldwell asserts claims for violation of the California Invasion of Privacy Act's pen register provision, California Penal Code § 638.51(a), intrusion upon seclusion under California common law, and invasion of privacy under the California Constitution based on the alleged surreptitious collection data from a dating app he used.  Dkt. No. 1-3 ("FAC") ¶¶ 64-102.  InMobi moves to dismiss each of these claims.  Dkt. No. 18 ("Mot."); Dkt. No. 24 ("Reply").  Caldwell opposes.  Dkt. No. 23 ("Opp.").  Because the motion is suitable for disposition without oral argument pursuant to Civil Local Rule 7-1(b), the hearing currently set for May 7, 2026 is hereby **VACATED**.  Having considered the parties' papers, the relevant legal authority, and good cause appearing, the Court **DENIES** InMobi's motion to dismiss for the reasons set forth below.

## I.      CIPA

CIPA's pen register provision prohibits any person from "install[ing] or us[ing] a pen register or a trap and trace device without first obtaining a court order[.]"  Cal. Penal Code § 638.51(a).  A "pen register" is "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or

electronic communication is transmitted, but not the contents of a communication." *Id.* § 638.50(a).

Cadwell alleges that InMobi, through its software development kit, "installed and used a pen register" on his devices. FAC ¶ 72. He alleges this technology "functions as a 'pen register' because it is a device or process that records or decodes dialing, routing, addressing or signaling information, including . . . . timestamped geolocation data, mobile advertising IDs, IP addresses, and other device fingerprinting details transmitted in outgoing electronic communications by their devices." *Id.* ¶ 68. He further alleges that this information is sent to InMobi "immediately and in real time without any intervening actor breaking the chain of transmission." *Id.* ¶ 69. Caldwell claims InMobi's software development kit "identifies users, gathers data, and correlates it with third-party datasets through identity resolution services, enabling persistent tracking and user profiling across applications and platforms" without users' knowledge or consent. *Id.* ¶ 71. Caldwell also claims that he had his "IP address[] and other dialing, routing, addressing or signaling data sent automatically and in real time to InMobi when [he] used mobile apps that had the InMobi SDK embedded," and he had "no reasonable means to detect, prevent, or opt out of InMobi's data collection" because "InMobi's SDK operates silently in the background of mobile applications, embedded by app developers and activated automatically without user interaction." *Id.* ¶ 70. The "data is transmitted when the app is opened or used, with no clear disclosure, no in-app control settings, and no operating system-level permissions that would allow users to block or substantially limit these transmissions." *Id.*

These allegations state a plausible claim for relief notwithstanding InMobi's arguments to the contrary. InMobi contends that adopting a reading of CIPA's pen register provision that covers its software development kit ignores the statutory text, expands the statute to unintended technologies, and makes for an unworkable reading. Mot. at 9-13; Reply at 7-12. Federal district courts have rejected such arguments and instead soundly interpreted CIPA's pen register provision to apply modern technologies. *See Riganian v. LiveRamp Holdings, Inc.*, 791 F. Supp. 3d 1075, 1093 (N.D. Cal. 2025) ("[F]ederal courts have interpreted the plain language of Section 638.50 expansively to find that 'pen registers' include[] data collection tools beyond those the record

2

information from telephones.") (collecting cases); *Harris v. iHeartMedia, Inc.*, No. 25-CV-06038-EKL, 2026 WL 247875, at *3 (N.D. Cal. Jan. 29, 2026) ("The overwhelming majority of courts that have considered this question have similarly concluded that third-party internet trackers meet the technical requirements of a pen register under CIPA.") (collecting cases); *Fregosa v. Mashable, Inc.*, No. 25-CV-01094-CRB, 2025 WL 2886399, at *6 (N.D. Cal. Oct. 9, 2025), *motion to certify appeal denied*, No. 25-CV-01094-CRB, 2026 WL 183857 (N.D. Cal. Jan. 23, 2026) (concluding that CIPA's pen register provision applied to website-based trackers and finding "no support in the legislative text, legislative purpose, or the growing body of decisions from this District" for defendant's argument to the contrary) (collecting cases). This Court follows these authorities here and concludes that CIPA's pen register provision applies to the internet tracking technology at issue in this case.[1]

InMobi also argues that Caldwell fails to allege interception of dialing, routing, addressing, or signaling information of a wire or electronic communication. Reply at 12. Not so. Caldwell alleges InMobi's tracking technology collects "timestamped geolocation data, mobile advertising IDs, IP addresses, and other device fingerprinting details transmitted in outgoing electronic communications by their devices." *Id.* ¶ 68. At the pleading stage, this is sufficient. *See Rodriguez v. Autotrader.com, Inc.*, 762 F. Supp. 3d 921, 930 (C.D. Cal. 2025) (denying motion to dismiss CIPA pen register claim where the plaintiff alleged that the software at issue collected "not just IP addresses, but also operating system information, browser information, geolocation data, and email addresses, for use by Defendant and third parties."); *Moody v. C2 Educ. Sys. Inc.*, 742 F. Supp. 3d 1072, 1077 (C.D. Cal. 2024) (concluding that device and browser information, geographic information, and browsing history fell within the scope of CIPA's pen register and trap and trace provisions).

---

[1] InMobi attaches to its reply a November 2025 petition for writ of mandate and a January 2026 order to show cause from the Second District of the California Court of Appeals on the issue of why a defendant's writ petition from an order overruling its demurrer to a CIPA Section 638.51 claim predicated on the use of website tracking technology should not be granted. Reply at 10. InMobi cites no authority for why those proceedings should dictate the outcome here, and accordingly, the Court adopts the reasoning of its fellow district courts as set forth above.

United States District Court
Northern District of California

InMobi's remaining arguments also fail to persuade. InMobi argues "Caldwell does not allege that InMobi tracked his browsing activity across websites, monitored his web browsing history, or used cookies or pixels to follow him across the internet to his private internet destinations." Reply at 13. However, he does allege, among other things, that InMobi can "monitor users with unsettling precision. It can pinpoint which exact store, restaurant, school, or building a person enters; measure how long they remain inside; track how often and at what times they return; and detect visits to competitors. InMobi even works to pinpoint the exact location of a user's home." FAC ¶ 36. This, together with the other allegations discussed above, is sufficient for Caldwell's pen register claim to survive the instant motion.

InMobi's challenges to the claim based on Caldwell's failure to explain how InMobi's technology functions as a pen register, Mot. at 11, how the data InMobi collected constitutes "dialing, routing, addressing, or signaling information" within the meaning of CIPA's pen register provision, *id.* at 13, what electronic communications Caldwell sent when InMobi allegedly intercepted his data, Reply at 13, also do not warrant dismissal. Despite InMobi's citation to a state court case – *Carter v. Prime Healthcare Paradise Valley LLC,* 198 Cal. App. 4th 396, 410 (2011) – for the proposition that facts must be pleaded with particularity when statutory remedies are invoked, the level of specificity InMobi urges here is not required under federal pleading standards. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").

InMobi's argument that Caldwell has pleaded himself out of a CIPA claim because the statute's definition of an "electronic communication" excludes "any communications from a tracking device[,]" Reply at 12, was not raised in InMobi's opening brief and is therefore not grounds for dismissal. *See Nathanson v. Polycom, Inc.*, No. 13-3476 SC, 2015 WL 12964727, at *1 (N.D. Cal. Apr. 16, 2015) ("As numerous courts (including the Ninth Circuit) have concluded, it is inappropriate to consider arguments raised for the first time in a reply brief.") (internal quotations, citations, and modification omitted).

Accordingly, InMobi's motion to dismiss Caldwell's claim under CIPA's pen register

provision is **DENIED**.

## II.    Intrusion upon seclusion and invasion of privacy

Because claims for intrusion upon seclusion under California common law and invasion of privacy under the California Constitution have similar elements, "courts consider the claims together and ask whether: (1) there exists a reasonable expectation of privacy, and (2) the intrusion was highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 601 (9th Cir. 2020) (citing *Hernandez v. Hillsides*, Inc., 47 Cal. 4th 272, 287 (2009)). As discussed below, Caldwell has sufficiently pleaded each element here.

### A.    Reasonable Expectation of Privacy

When evaluating whether a reasonable expectation of privacy exists, "courts consider a variety of factors, including the customs, practices, and circumstances surrounding a defendant's particular activities." *Id.* (citing *Hill v. NCAA*, 7 Cal. 4th 1, 36 (1994)). The question is "whether a defendant gained 'unwanted access to data by electronic or other covert means, in violation of the law or social norms.' " *Id.* (quoting *Hernandez*, 47 Cal. 4th at 286).

Caldwell alleges that he used "a dating app for gay individuals on his Android device[,]" which "[u]nbeknownst to him, . . . contained InMobi's embedded tracking code[.]" FAC ¶ 7. This code allowed InMobi to collect, use, and disclose Caldwell's data, including "precise geolocation, mobile advertising IDs, IP address, device information (including device model, operating system version, and full user-agent string), and other information that can fingerprint a user or device." *Id.* Caldwell asserts that "[t]his information is automatically transmitted to InMobi's servers with high frequency, each time the app makes an ad request to InMobi's network." *Id.* ¶ 18. InMobi can analyze ad requests from other apps on the same device and can detect which apps are installed, which allows InMobi "to draw inferences about a user's traits and interests." *Id.* ¶ 19.

InMobi discloses this data to "third-party 'identity resolution' partners," which "ingest the data, match it against existing profiles, and return a unique identity token, which is a persistent identifier that links all known data points about a particular user across devices, platforms, and services." *Id.* ¶ 20. Through this process, "InMobi can merge multiple identifiers into a single,

unified profile for each user, even where some identifiers are nominally 'pseudonymous[,]' " enabling "InMobi and its partners to track users across devices and services, continually updating profiles with new behavioral data such as app usage patterns, timestamped location histories, device metadata, and travel routines." *Id.* ¶ 22.  When presenting this data as a part of a bid request to advertisers, InMobi enriches it "with a trove of in-depth information about the user" such as behavioral or demographic segments. *Id.* ¶ 23.  Examples of these segments include:

- "Use Any Rx Treatment for Depression"
- "Addictions > Alcohol"
- "Functional Area & Job Role > Legal – Judge"
- "Eating Disorder"
- "First Response Brand High > Heavy Buyer"5
- "no pets in hh > post-graduate > age of children in hh 3-5 > heavy online
- shopper

*Id.* ¶ 24.

Courts have routinely recognized that an app user may have a reasonable expectation of privacy when data is collected and aggregated on this scale.  *See, e.g.*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 603 (concluding that plaintiffs had established a reasonable expectation of privacy where they alleged Facebook collected an "enormous amount of individualized data[,]" which could easily be collected without a user's knowledge and with the precision to identify a logged-out user, and was not disclosed to users); *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023) (plaintiffs invasion of privacy claims survived motion to dismiss where they alleged defendant accumulated a "vast repository of personal data," including sensitive health and personal safety information, which went "well beyond the 'routine commercial behavior' of collecting contact information for sending advertisements"); *Gabrielli v. Motorola Mobility LLC*, No. 24-CV-09533-JST, 2025 WL 1939957, at *10 (N.D. Cal. July 14, 2025) (denying motion to dismiss privacy claims where the plaintiff alleged defendant's tracking technologies collected "browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data").  This Court does the same.

InMobi's attempts to persuade the Court otherwise fail.  It argues that "[i]n stark contrast

United States District Court
Northern District of California

to each of these cases, Caldwell has not alleged that InMobi links any of the data it collects to personal identifiers such as his name or email address," his "references to tracking 'in-app behavior' and 'online activity' are not even tied to any allegation that such data was collected from him personally," and there is no assertion that "InMobi has created profiles capable of tracking his entire browsing history across the internet." Reply at 17-18. Setting aside what Caldwell does not allege, the allegations currently in the amended complaint, as discussed above, are sufficient to plausibly allege a reasonable expectation of privacy.

InMobi's arguments that Caldwell's claims should be dismissed because he has not identified the app at issue by name, Mot. at 13; Reply at 16, and thereby precluded InMobi from seeking dismissal based on the information contained in the app's disclosures or on the basis of consent, Reply at 6, 15-16, fare no better. InMobi can easily propound discovery to learn the name of the specific app at issue. InMobi is also free to raise any argument about consent or the information contained in the app's disclosures at a later stage. *See Semien v. PubMatic Inc.*, No. 25-CV-03164-SI, 2026 WL 216333, at *3 (N.D. Cal. Jan. 27, 2026) ("[T]he issue of whether [the defendant] properly obtained consent is a factual question to be resolved on summary judgment or at trial.").

Accordingly, to the extent InMobi seeks dismissal of Caldwell's privacy claims for failure to allege a reasonable expectation of privacy, it is **DENIED**.

### B.    Highly Offensive

"Determining whether a defendant's actions were highly offensive to a reasonable person requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606 (internal quotations and citations omitted). This inquiry "focuses on the degree to which the intrusion is unacceptable as a matter of public policy." *Id.* "Under California law, courts must be reluctant to reach a conclusion at the pleading stage about how offensive or serious the privacy intrusion is." *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 797 (N.D. Cal. 2019) (citations omitted). Only if the

allegations "show no reasonable expectation of privacy or an insubstantial impact on privacy interests" can the "question of [a serious or highly offensive] invasion . . . be adjudicated as a matter of law." *Hill*, 7 Cal. 4th at 40.

In keeping with these authorities, at this juncture, Caldwell has alleged enough in his amended complaint to survive the instant motion. The Court cannot conclude, as a matter of law, that the alleged tracking of Caldwell's "precise location, mobile advertising ID, IP address, and device fingerprinting data," FAC ¶ 51, which "were routed through an identity resolution service, linked to his real-world identity, and appended to persistent advertising profiles[,]" *id.* ¶ 54, revealing intimate details about his "sexuality and orientation, movements, habits, and other sensitive traits[,]" *id.*, without his "knowledge or consent," *id.*, is not highly offensive. InMobi's arguments that the in-app data collection at issue here is limited, anonymized, or "routine, commercial [advertising] activity," Mot. at 14, 19; Reply at 18, and that Caldwell fails to "explain how any of the data allegedly collected by InMobi identifies Caldwell's real-world identity," Reply at 18, do not persuade otherwise. Accordingly, to the extent InMobi seeks dismissal of Caldwell's privacy claims on the basis that he has not sufficiently alleged that the data collection at issue is highly offensive, it is **DENIED**.

**IT IS SO ORDERED.**

Dated: April 29, 2026

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**